Whaley, Chief Justice,
delivered the opinion of the court:
This case involves the interpretation of Article 15 of the standard form of Government contract relating to liquidated damages.
In July 1935 plaintiff in his individual capacity entered into a written contract with the defendant, represented by Captain E. J. Heller, of the Philadelphia Depot of the Quartermaster Corps, War Department, as contracting officer, for the sale and delivery by plaintiff to the defendant of certain cotton sheets and pillowcases for the consideration of some three-hundred-and-odd-thousand dollars. In his bid, in response to the advertisement for bids, plaintiff stated that he would procure sheets and pillowcases from the Naumkeag Steam Cotton Company, with factories located at Salem and Peabody, Massachusetts. A performance bond was given in his individual capacity and guaranteed by a surety company. Plaintiff promised to furnish and deliver the articles to the defendant in installments on certain dates to the Quartermaster depots at New York, Chicago, and Fort Mason, California. The pillowcases and sheets were manufactured by the Naumkeag Steam Cotton Company. Plaintiff fully performed the contract and was paid the contract price with the exception of a certain amount deducted as liquidated damages for delays in compliance with the delivery dates.
Delays in the delivery of the pillowcases and sheets were *638 caused by a strike of the employees of the Naumkeag Steam Cotton Company which lasted for ten and one-half weeks, during which time the plaintiff was unable to procure the articles from the Naumkeag Steam Cotton Company. The strike started on August 12 and continued until October 23, 1935.
Plaintiff filed with the contracting officer a notice of the strike and requested an extension of time in which to perform the contract and a release from liquidated damages under Article 15 of the contract. The contracting officer informed plaintiff that his request for extension of time and release from liquidated damages was to be made to the Comptroller General but must be filed with the contracting officer who would forward the request to the Comptroller General. The contracting officer did send the request when filed to the Comptroller General and the Comptroller General ruled that the plaintiff was subject to the liquidated-damage clause and assessed liquidated damages in the sum of $16,895.25. The time of delay and the amount of liquidated damages, if plaintiff is liable therefor, are not in dispute.
Article 15 of the contract provides that—
* * * The contractor shall not be charged with liquidated damages or any excess cost when the delay in delivery is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, * * * strikes * * * but not including delays caused by subcontractors. * * *.
Article 15 further provides that—
* * * The contractor shall, within ten days from the beginning of any such delay, notify the contracting officer in writing of the causes of delay, who shall ascertain the facts and extent of the delay and his findings of facts thereon shall be final and' conclusive on the parties * * *.
The contracting officer failed to pass on plaintiff’s notice of the cause of the delay and did not make any ascertainment of the facts or any findings of fact thereon. He forwarded the notice to the Comptroller General, who had no authority to pass on these facts or make a decision. The Comptroller General’s act was a nullity.
*639 Plaintiff was deprived of one of tlie rights given him under his contract. He was entitled to the contracting officer’s unbiased decision on the merits of the delay. Plaintiff was also entitled to the right to appeal from the findings of the contracting officer to the head of the department. This right also plaintiff was denied through the action of the contracting officer. There is a complete failure on the part of the contracting officer to perform his duty.
However, when the contract was completed, $16,895.25 was deducted from the plaintiff’s contract as liquidated damages on the ground that the Naumkeag Steam Cotton Company was plaintiff’s subcontractor and therefore plaintiff was removed from the “unforeseeable” clause in the contract.
Plaintiff was required to name the source from which he intended to procure and deliver the pillowcases and sheets in order that the Government could have supervisors at the mill, from which the articles were to be procured, to inspect the conditions under which the manufacturing was done, but there was no subcontractual relationship existing between plaintiff and Naumkeag. See Collier Manufacturing Co. v. United States, 61 C. Cls. 32, 37, certiorari denied, 271 U. S. 680.
The question now arises as to whether the strike was unforeseeable. If it were, then plaintiff is not liable for the assessment of liquidated damages.
The evidence shows that from 1933 to 1935, the year in which this contract was entered into, plaintiff had entered into and executed seven contracts with the same procurement officer, and in each contract he was named as the individual contractor, and in each contract he had named the Naumkeag Steam Cotton Company as the source from which he intended to procure the articles named in the contracts. All these contracts were successfully carried out, completed, and paid for on time. No question arose over delays or any other matter which would throw doubt on the capacity of the plaintiff to perform the contract or on the source from which he was to procure the articles.
The strike at the Naumkeag Steam Cotton Company could not have been foreseen. The undisputed evidence shows that it was brought about by a demand for higher wages when the *640 company at the time was paying the highest wages in the textile industry. There was no possible way for the plaintiff to have anticipated that there would be any walk-out at the Naumkeag Company which would have retarded the production of the articles manufactured and procured to fulfill his contract with the Government.
Article 15 contains a provision making inexcusable “delays caused by subcontractors.” Subcontractors do not cause acts of God or the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, or unusually severe weather. Delays due to any of these causes are therefore not “delays caused by subcontractors.”
The reason for excluding delays that are caused by subcontractors is plain. If the excluding clause were not in the contract, a contractor who was delayed by an inefficient subcontractor could well say that he was delayed by an unforeseeable cause — he had no way of knowing that his subcontractor would fall down on the job.
If the delay is really caused by the subcontractor, the contractor has his recourse against the subcontractor to recover liquidated damages imposed upon him by the Government.
Whether the delay is in the plant of the contractor or in the plant of the subcontractor is a matter of indifference. It might be a freight embargo from New York to Baltimore, where the subcontractor’s place of manufacture was located in New York, and the contractor’s stock pile in Philadelphia, and the place of final delivery a Government warehouse in Baltimore. The delay in shipment out of New York would be tied up with the delay in shipping out of Philadelphia. One could not say a part was inexcusable because chargeable to the subcontractor and a part excusable because otherwise chargeable to the contractor.
The decision of the Comptroller General is not only legally erroneous but without warrant of law.
Plaintiff is entitled to recover the sum of $16,895.25.
It is so ordered.
Littleton, Judge, concurs.