### UNITED STATES CASUALTY CO. v. UNITED STATES.

No. 45093.

Court of Claims.
Oct. 7, 1946.

Kahl K. Spriggs, of Washington, D. C., (Challen B. Ellis, of Washington, D. C., and Stanley E. Hartman, of Baltimore, Md., on the brief), for plaintiff.

James J. Sweeney, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

This is a suit to recover $16,200 liquidated damages assessed at the rate of $200 a day for a period of 81 days' delay in the completion of a construction contract in Puerto Rico.

The contract called for the construction of an auditorium for the University of Puerto Rico by Pedro A. de Castro, an individual contractor. Notice to proceed was received by the contractor on August 14, 1936. The stipulated time was 270 calendar days, thus fixing the completion date as May 11, 1937. The work was properly begun within the time specified, but was completed 81 days late.

The contractor was killed in an airplane accident October 18, 1936. The plaintiff as surety had executed a performance bond.

The contractor's widow was appointed administratrix on October 20, 1936, and by letter dated October 24, 1936, advised defendant of that fact and asserted that the work was being delayed and would be further delayed as a consequence of her husband's death, and requested an extension of 90 days for the proper and full completion of the contract.

The administratrix was unable to obtain the technical assistance and financial backing necessary to carry on the work. Consequently, on November 5, 1936, she advised defendant in writing that she "must refuse further to prosecute the work." On November 9, 1936, defendant notified the administratrix of its intention to terminate the rights of the contractor and the contractor's estate under the contract unless within 10 days she would furnish assurance that she would continue to prosecute the work.

On November 11, 1936, the administratrix replied stating that she refused to prosecute the project further, and that she waived the 10 days' notice. On November 13 defendant acknowledged receipt, advising the administratrix that all the rights of the contractor and the contractor's estate under the contract were thereby terminated as of November 11, 1936.

Defendant by letter dated November 13, 1936, addressed to the plaintiff at San Juan but actually delivered by hand to plaintiff at Baltimore, Maryland, on November 18, 1936, notified plaintiff that all rights of the contractor and the contractor's estate had been terminated as of November 11, 1936, and advised plaintiff that it had the right to take over and proceed with the performance of the contract. In the same letter defendant advised plaintiff that it had 10 days from the time of the mailing of the

notice within which to take over and proceed with the performance of the contract.

On the same date, November 18, 1936, plaintiff advised defendant that it would exercise its right to take over and proceed with the performance of the contract.

On the same date the plaintiff made an agreement with Luis R. Gonzalez to take over the contract work, and filed with the defendant its request for an extension of 60 days' time in which to complete the work, claiming as a basis that the death of the contractor and the consequent negotiations for the transfer of the contract, and for securing the services of men with the necessary training and experience, had delayed and would continue to delay the progress of the work; that such delay would amount to more than 60 days, but it was believed that with the extension of 60 days it would be able to complete the project to the satisfaction of all concerned.

The project was completed in a satisfactory manner but the defendant refused to grant any extension of time and assessed the full liquidated damages at $200 a day for the entire 81 days' delay in completion and withheld this amount from the contract price. The plaintiff sues for the recovery of this amount.

The form of the contract differs in some respects from the regular standard form customarily used in Government contracts.

The terms forbid the transfer of the contract or any part thereof unless such assignment or transfer was expressly authorized by the administrator and unless the sureties upon the performance and payment bond consented thereto or waived their right to notice of such assignment or transfer.

On the question of liquidated damages Article 16 of the contract reads in part as follows:

"(Par. 32)   An extension of time equal to the time lost by delay shall be allowed to the Contractor for the completion of the project, if, during the progress of the project,

\*       \*       \*       \*       \*       \*

"(b)   the work should be delayed on account of unforeseen causes beyond the control and not due to any fault or negligence of the Contractor, including, but not restricted to, Acts of God, acts of the public enemy, acts of the Administrator, acts of another contractor in the performance of a contract with the Administrator, fire, floods, epidemics, quarantine restrictions, strikes, or freight embargoes: "Provided, That the Contractor shall, within forty-eight (48) hours from the beginning of the cause of such delay submit to the Administrator written notice of such delay and proof satisfactory to the Administrator as to the impossibility of prosecuting the work for any of the above causes."

Delay Due to Death of Contractor.

Plaintiff asserts that the death of the contractor was an unforeseen cause of delay, according to the terms of the quoted provision.

The contracting officer referred plaintiff's request for an extension of time to the chief architect of the project and to the general counsel of the agency. The chief architect reported his findings and recommended that the 60 days' extension of time be granted.

The contracting officer denied the request on the ground that he had no legal authority to grant such an extension of time, but stated that if plaintiff desired, the claim would be presented to the Comptroller General who was the final administrative authority upon matters of that type.

Plaintiff thereupon submitted further grounds upon which it believed an extension of time should be granted. It discussed these grounds with the members of the legal staff of the defendant's agency who agreed that if such grounds did not appear to warrant the granting of an extension of time the whole matter would be referred to the office of the Comptroller General of the United States for final decision.

On March 1, 1937, the contracting officer set forth the essential facts in a letter to the Acting Comptroller General and requested an opinion as to whether under the contract he was authorized to grant an extension of time. In somewhat involved language the Acting Comptroller General advised that the terms of the contract did not permit a remission of liquidated damages.

## Delay in Approval of Plans.

The plaintiff also requested an extension of 50 days in the time for completion on the ground that the chief architect had failed over a period of 50 days to review and return shop drawings required for the manufacture of steel.

On October 14, 1936, the chief architect of the project received from one of de Castro's subcontractors a set of plans which were in the form of blue prints rather than original drawings. The contract required that such plans should be submitted to and approved by the chief architect. While it was customary to submit original drawings rather than blueprints the chief architect knew the purpose for which the blueprints were presented and accepted them without comment.

However, on the same date he received these blueprints he handed them to the associate architect. The associate architect had reviewed a set of preliminary plans for the steel work in September 1936 at the instance of the contractor de Castro. Mistaking the plans handed him by the chief architect for the preliminary plans he had reviewed in September, the associate architect laid them aside and took no action with respect to them until several weeks later when the error was discovered. On November 27 the chief architect, who was then on leave, having resigned on November 21, 1936, inquired of the acting chief architect about the plans and urged approval of them in order that they might be returned to the contractor. The acting chief architect thereupon investigated and found the facts to be as recited above. The chief architect again called upon the acting chief architect on December 2, 1936, and the plans were approved and returned to plaintiff on December 3, 1936.

The delay in approval of the plans caused delay in the arrival of essential structural steel which apparently could not be ordered until the plans had been approved. The structural steel did not arrive at the site of the work until January 12, 1937. The pouring of concrete in balconies, stage floors, and roofs could not be started until the steel had been put in place.

There was a further delay in the delivery of terra cotta and cast stone. There is no evidence, however, that this delay was due to any fault on the part of the defendant.

The two delays, that is, the delay incident to the death of the contractor and the delay incident to the failure to approve the plans, ran concurrently.

The plaintiff earnestly urges that the death of the contractor was an unforeseen cause and that therefore plaintiff should not be subjected to liquidated damages for the delay incident to the contractor's death. It also urges that since this contract forbids the transfer or assignment without the consent of the surety, plaintiff could not be charged with the delay incident to the period when the Government was permitting the administratrix to undertake the completion of the work.

The defendant claims that the death of the contractor was not an unforeseen cause; that the adverse decision of the contracting officer under the peculiar wording of the instant contract was final; that the administratrix took the place of the contractor; that the delay in approval of the plans was the fault of the plaintiff on account of the fact that blueprints instead of the original drawings were presented to the chief architect and that the surety must assume responsibility for all these matters as a result of its having assumed the obligations as to the completion of the contract according to its terms.

There are numerous rather technical claims and defenses on the part of both the plaintiff and the defendant. After going through these various contentions and considering the provisions of this unusual contract and the evidence in the case, and brushing aside the technical contentions on both sides, we have reached the conclusion that plaintiff is entitled to recover a part of the liquidated damages assessed. We reach this conclusion on the following grounds:

(1) The death of the contractor, in view of all the circumstances of this case and the wording of the contract, should be construed as an unforeseen cause, and this directly caused a delay of at least 40

days in the completion of the contract. Even if this construction of the contract be in error, the fact that defendant agreed without notifying the surety that the administratrix should undertake the completion of the contract and granted the privilege to her without any further action as between the defendant and the surety constituted a waiver on the part of the defendant of any claim for liquidated damages during that period. This covers the period from October 18, 1936, to November 18, 1936, when the letter notifying the plaintiff of the cancellation of the contract was delivered to the plaintiff at the Baltimore office, plus the ten days which, according to the terms of that letter, the plaintiff was given in which to begin operations. This is a period of 40 days. This action constitutes a waiver on the part of the defendant of liquidated damages for that time. On the basis of either or both of these interpretations, liquidated damages should not have been assessed for that particular 40 days' delay.

■ (2) The blueprints of the plans were delivered to the chief architect on October 14, 1936, 4 days prior to the contractor's death. Since this was a routine matter, it seems that they might well have been approved by October 18. The time that expired between October 18 and December 3, when they were finally approved, we find was due to the fault of the defendant, since the chief architect knew the purpose of the blueprints and accepted them as such. However, 40 of these 45 days ran concurrently with the 40 days' delay caused by the contractor's death.

■ Plaintiff also asserts that the failure of the defendant to make progess payments to the surety on December 1, 1936, and January 1, 1937, constituted a breach of the contract on the part of the defendant which in itself would prevent the assessment of liquidated damages. However, many things had to be considered, audits made, and the question of the rights of the estate of the contractor determined. In these circumstances we do not consider the delay in payment a breach of the contract, especially since apparently the progress of the work was not handicapped in any

way by the delay in payment. This claim, however, is no more technical than the Government's effort to hold to a strict lettering and accounting without any consideration whatever for the unfortunate if not unforeseen tragedy which necessarily delayed the completion of the work. We are disposed to disregard both technical approaches and endeavor to arrive at a just and fair conclusion of the whole matter.

There were other delays, responsibility for which it is difficult to determine. However, since their extent is uncertain and the responsibility of the defendant not definitely established, we find that plaintiff is not entitled to recover for them.

■ Defendant claims that since under the terms of the contract all disputes were to be settled by the contracting officer, whose decision was to be final, there can be no recovery. However, a reading of the record and letters shows rather clearly that the contracting officer did not make a final decision on the question of whether an extension should be allowed on account of the death of the contractor or the delay in approving shop plans, which was closely linked to the same incident. Cotonificio Bustese, S.A. v. Morgenthau, 74 App.D.C. 13, 121 F.2d 884, 885. These questions involved a construction of the contract. Rather than decide them, the contracting officer referred them to the Comptroller General who had no authority, according to the terms of the contract, to make the decision. Livingston v. United States, 101 Ct. Cl. 625, 638. The contracting officer apparently was reluctant to assess liquidated damages against the plaintiff, but after consulting with his lawyers he was doubtful of his legal authority to waive the assessment and he consequently ducked the issue by referring it to an agency which had no authority whatever in the premises. In all these circumstances, we do not feel that his decision in the form in which it was presented in this case constituted either a final decision or final action or the question of delay during the period for which we have allowed recovery.

We have considerable doubt as to whether any liquidated damages whatever should have been assessed in this case. We rather

think it would have been a wiser course, in view of all the circumstances, for the Government to have waived entirely the matter of assessing liquidated damages. This course, however, was not taken, and we must decide the legal issues which are presented on the facts and evidence and the terms of the contract as they are set before us.

We find that plaintiff is entitled to recover the liquidated damages that have been assessed against it for a period of 45 days, or a total of $9,000.

It is so ordered.

WHALEY, Chief Justice, and WHITAKER, and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.