## BRISTER & KOESTER LUMBER CORP. v. UNITED STATES.

No. 10604.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 16, 1950.

Decided Feb. 15, 1951.

E. E. Blakely, Washington, D. C., with whom Grover C. Kane, Washington, D. C., was on the brief, for appellant.

Joseph F. Goetten, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty., and Ross O'Donoghue and Joseph M. Howard, Asst. U. S. Attys., all of Washington, D. C., were on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a civil action brought by Brister & Koester Lumber Corporation under the Tucker Act[1] to recover payment for lumber delivered to and used by the Constructing Quartermaster at Fort Eustis, Virginia. The District Court granted the defendant's motion for summary judgment upon the ground that the complaint was not filed within the six-year period of limitations provided in the statute.

It appears that the United States, through the Quartermaster General of the Army, made a contract with certain construction companies (Pettyjohn, Weddle and Hofheimer Companies) for the construction of a replacement center at Fort Eustis, Virginia. That contract is referred to in this litigation as the "prime contract".

1. 24 Stat. 505 (1887), as amended, 28 U.S.C.A. § 41(20) (1927), revised and recodified June 25, 1948, 62 Stat. 971, 28 U.S.C.A. § 2401 (1950).

It contained a so-called Disputes Article reading as follows: "Except as otherwise specifically provided herein, all disputes concerning questions of fact arising under this contract shall be decided by the Contracting Officer, subject to written appeal by the contractor within 30 days to the Chief of Branch concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto, when the amount involved is $15,000 or less. When the amount involved is more than $15,000, the decision of the Chief of Branch shall be subject to written appeal within 30 days by the Contractor to the Secretary of War, whose decision shall be final and conclusive upon the parties hereto. In the meantime the Contractor shall diligently proceed with the work as directed."

The Government also entered into a written contract with the appellant, Brister & Koester Lumber Corporation, for delivery of approximately 2,400,000 board feet of lumber for use in the construction of the center. Appellant says that the original of that contract has been lost. However, the lumber thus ordered was supplied. During the course of that delivery additional lumber, totaling approximately 428,000 board feet, was ordered, delivered, and used in the construction work. The present dispute concerns payment for that additional lumber. The Lumber Corporation claims payment at the price fixed in its formal contract. The Government has paid a price said to be the market value of the lumber at the time it was delivered. The difference between appellant's claim and the price paid is the $3,465.71 sued for.

It appears from the documents filed in the proceeding that on August 29, 1941, the Lumber Corporation addressed to the "War Department, Office of the Quartermaster General, Fourth & D Sts., S. W., Washington, D. C.", a letter enclosing a claim for the balance claimed to be due it on the additional lumber "on sixteen invoices dated January and February 1941, purchase order No. 455 against John P. Pettyjohn & Co., Dewey G. Weddle & Co. and The Hofheimer Construction Co., Contractors for Fort Eustis, Va." On

September 9, 1941, the Constructing Quartermaster at Fort Eustis advised the Lumber Corporation that that office concurred in a recommendation that the claim be denied. Whereupon the Lumber Corporation made demand upon the Quartermaster General for the balance due. The Lumber Corporation says that thereafter it was advised by the legal advisor of the Quartermaster General that the Corporation should appeal to the Under Secretary of War. In any event, on October 27, 1941, the Corporation did appeal to "The Undersecretary of War, New War Department Bldg., Washington, D. C." Under date of January 1, 1942, the Under Secretary of War, Robert P. Patterson, wrote the Lumber Corporation, referring to "your claim under Contract No. W 6282 qm–2". That reference was to the prime contract. The letter said: "Your attention is called to the terms of Article XV, of the contract * * *." That article was the so-called Disputes Article of the prime contract. The Under Secretary continued: "Inasmuch as it appears that the amount of your claim is less than $15,000., you are advised that the contract makes no provision for appeal to the Under Secretary of War under the circumstances of your case. The matter is being referred to the Chief of Engineers who, not having acted on the case, will, as the head of the branch, take the necessary action thereon."

Under date of January 28, 1942, a letter signed "For the Chief of Engineers" was addressed to the Lumber Corporation "relative to your claim for payment of certain invoices covering overshipments of lumber to Pettyjohn, Weddle, and Hofheimer, prime contractors at Fort Eustis, Virginia". The letter said: "Under date of September 24, 1941, your claim was forwarded to the General Accounting Office by the Chief of Finance for proper disposition of same. In view of the fact that the matter is now in the hands of the General Accounting Office, this office can take no further action in the case."

It is thus apparent that in dealing with the claim of the Lumber Corporation both parties treated it as governed by the provisions of the prime contract. It is true

that, as the parties stipulated, there was no express provision in the informal contracts in regard to administrative proceeding by the parties. Technically speaking, the additional lumber appears to have been upon a verbal order. But what the parties agree upon is, of course, their contract. And so, where both parties treat a transaction as being governed by a specific formal written document, and both parties act accordingly, such agreement would seem to constitute the contract.

If the Disputes Article governed, any decision by the "Chief of Branch concerned" would have been final and conclusive. But, as above shown, the chief of branch, who in this instance was the Chief of Engineers, declined to take action. Instead, on January 28, 1942, he advised the Lumber Corporation that the claim had been forwarded to the General Accounting Office for disposition.

 There is a line of cases in the Court of Claims, beginning at least as early as 1930,[2] which hold that where there is in a contract with the Government a clause providing that the decision of a certain official shall be final and conclusive, but that officer fails or refuses to make any decision, such failure or refusal constitutes a breach of the contract and suit will thereupon lie. We have been unable to find that that rule has been either modified or deviated from by that court. We are inclined to follow such a rule of law established by that court in respect to a Government contract.

 It follows that the right of action of the Lumber Corporation accrued on January 28, 1942, when it was advised that the chief of branch would take no action pursuant to the contract. This breach of

contract gave rise to a right of action, which, but for the breach, the contractor would not have had.[3] Since the action was brought within six years from that date, it follows that it was not barred by the statute of limitations.

We intimate no opinion upon other phases of the case, such as other defenses interposed by the Government, which, if the facts in respect thereto are undisputed, might properly be considered by the trial court upon the motions for summary judgment. Those matters were not treated by the District Court in its disposition of those motions, since it acted upon the statute of limitations, and we think it best that that court act upon them. Accordingly, the judgment is reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

---

2. Heid Bros. v. United States, 1930, 69 Ct.Cl. 704; Karno-Smith Co. v. United States, 1936, 84 Ct.Cl. 110; James Mc-Hugh Sons, Inc. v. United States, 1943, 99 Ct.Cl. 414; Cape Ann Granite Co., Inc. v. United States, 1943, 100 Ct.Cl. 53; Thomas Earle & Sons, Inc. v. United States, 1944, 100 Ct.Cl. 495; Manufacturers' Casualty Ins. Co. v. United States, 1946, 63 F.Supp. 759, 105 Ct. Cl. 342; United States Casualty Co. v. United States, 1946, 67 F.Supp. 950,

107 Ct.Cl. 46. See also Anderson, The Disputes Article in Government Contracts, 44 Mich.L.Rev. 211 (1945).

3. This situation differs from that considered by the Second Circuit in Gregory v. United States, 1951, 187 F.2d 101, and by the Ninth Circuit in Thurston v. United States, 1950, 179 F.2d 514. In those cases the injured person had by statute a right of action enforceable in the courts. He also had an intervening administrative remedy.