WELDON FARM PRODUCTS, INC., a
corporation, Plaintiff,

v.

COMMODITY CREDIT CORPORATION,
Defendant.

No. 4–61–Civ.–254.

United States District Court
D. Minnesota,
Fourth Division.

Feb. 8, 1963.

McNeil V. Seymour, McNeil V. Seymour, Jr., Seymour & O'Connor, St. Paul, Minn., for plaintiff.

Miles W. Lord, U. S. Atty., John J. Connelly, Asst. U. S. Atty., Minneapolis, Minn., for defendant.

DEVITT, Chief Judge.

This action challenges the validity of a decision of the Contracts Disputes Board, Commodity Credit Corporation, upholding the decision of the Contracting Officer of the defendant in assessing liquidated damages against Weldon Farm Products, Inc. for delays in deliveries of certain carlots of nonfat dry milk purchased from Weldon under Contract LD-DF 2249.

Jurisdiction is based on 15 U.S.C.A. § 714b(c).

Section 201(c) of the Agricultural Act of 1949, 7 U.S.C.A. § 1446(c), authorizes purchases of milk products as a method of price support to producers of milk and butterfat. Pursuant to this statutory authority, defendant purchased large quantities of nonfat dry milk. This was accomplished under contracts of sale entered into under the terms of announcements, public notice of which was published for the marketing year April 1, 1957 through March 31, 1958, 22 F.R. 2308.

During the period March 28, 1957 through April 3, 1957, defendant entered into contracts of purchase covering 113,-830.094 pounds of milk with 14 separate contractors, including plaintiff, for delivery of milk meeting the same quality requirements as the contract involved in this action. Between May 31, 1957 and June 18, 1957, defendant entered into contracts with 17 separate contractors, including the plaintiff, for an aggregate of 89,168,972 pounds of additional milk meeting the same requirements as those in the contract involved in this action.

On September 27, 1957, plaintiff requested a three-week extension of time for delivery of dry milk under the exculpatory provisions of the liquidated damage clause of the contract between the parties. Later, on October 14, 1957, plaintiff requested a four-week extension. These requests for extensions were based upon claims that unusually hot weather and generally adverse weather conditions led to an abnormal increase in bacteria count which in turn resulted in rejection by defendant of large quantities of nonfat dry milk in September and October, 1957. The basis for these requested extensions was amplified by defendant in a letter dated October 29, 1957. Later, on November 15, 1957, plaintiff requested additional time, totalling 9 weeks in all, for the same reasons.

Some ten months later, on September 8, 1958, the contracting officer of defendant replied to plaintiff's requests for extensions of time. He denied them for the reason that evidence had not been furnished that the weather was inordinately severe. He was unable to conclude that the delays in delivery were due solely to causes beyond the control and without the fault or negligence of the contractor. Liquidated damages, in accordance with the contract, were assessed.

The Disputes Article of the contract provided that disputes concerning the contract should be decided in writing by the contracting officer subject to appeal within thirty days to the President of defendant corporation or to his duly authorized representatives whose decision would

be final, subject to the exceptions which are generally the same as those provided in the Wunderlich Act, 41 U.S.C. §§ 321, 322. The Contracts Disputes Board had been designated to hear appeals from decisions of contracting officers under the disputes article, 14 F.R. 1865, as amended, 20 F.R. 8535.

Plaintiff made timely appeal to the Contracts Disputes Board. Extensive hearings were held in St. Paul, Minnesota, form January 13 through January 16, 1959. These hearings included the appeals of plaintiff and several other petitioners who also had made late deliveries under their respective contracts. The Contracts Disputes Board sustained the decision of the Contracting Officer in part, and reversed his decision in part. This appeal followed.

The contract involved in the instant case is made up of the following eight documents:

(a) Announcement LD-11 dated September 14, 1954, setting forth under Plan A the terms and conditions for the sale to defendant of Spray process nonfat dry milk packed in small containers;

(b) Request No. 39 dated June 5, 1957 by defendant for offers of milk subject to the terms and conditions of (i) Plan A of LD-11 as modified by said request, and (ii) the Uniform Contractual Provisions;

(c) Uniform Contractual Provisions (Form CSS-10 dated February 2, 1955) containing information for offerors and standard contractual provisions for use by defendant in procurement of commodities;

(d) Plaintiff's telegram dated June 14, 1957, offering under said request 4,950.-000 pounds of milk at 18.24 cents per pound to be shipped from the plant of Dairyland Cooperative Association at Juneau, Wisconsin, in 10 weekly installments commencing the week of July 8, 1957 and terminating with the week of September 15, 1957;

(e) Defendant's letter of June 18, 1957, accepting the above offer;

(f) Defendant's telegram of July 18, 1957 to plaintiff stating defendant's "desire to extend" delivery dates beginning with the week of July 22, 1957 (Weldon's Ex. 7, Part II of Record);

(g) Plaintiff's telegram of July 19, 1957 in which "we accept two week's extension" referred to in the above telegram of July 18, 1957; and

(h) Defendant's telegram of July 19, 1957 to plaintiff stating that the contract is amended to extend delivery dates as stated above.

Announcement LD-11 and Request No. 39 are each signed by Don S. Anderson— the Announcement by him in his capacity on September 14, 1954, of "Acting Director, Livestock and Dairy Division, CSS", and the Request by him in his capacity on June 5, 1957, of "Director, Livestock and Dairy Division."

The following terms of the contract documents are pertinent:

(a) The provisions under Plan A of LD-11 reading:

"7. DELIVERY: * * * Within three business days after the offered delivery date(s), the Commodity Stabilization Service Office serving the territory in which the shipments originate will furnish shipping instructions for the milk. Delivery shall be effected in accordance with such delivery instructions within five business days after their receipt by the contractor, or within five business days after the offered delivery date(s), whichever is later.

* * * * * *

"9. DAMAGES, INCLUDING LIQUIDATED DAMAGES: (a) Failure of the contractor to make delivery of the milk in accordance with the contracted delivery date(s) will cause serious and substantial damage to CCC because of its urgent need for prompt delivery. Since it will be difficult to prove the amount of such damage, the contractor shall pay to CCC by way of compensation, and not as penalty, liquidated damages at the rate of 0.10 cents per pound for each ten calendar days' delay in delivery or fraction thereof.

The contractor in submitting an offer, and CCC in accepting such offer, agree that such damages are a reasonable estimate of the probable actual damages. Deductions representing such damages may be made by CCC from any amounts due the contractor. * * * Contractor's right to proceed hereunder shall not be terminated and liquidated damages shall not be assessed if the contractor gives CCC prompt written notice of such delay and the cause thereof, and CCC determines in writting that the delay is due solely to causes beyond the control and without the fault or negligence of the contractor * * *. Written notice of such determination shall be given to the contractor. * * * The decision of CCC as to cause of delay shall be final and conclusive on the parties, subject only to appeal by contractor as provided in Article 36, 'Disputes', of Form CSS-10. * * *"

(b) The part of the Uniform Contract Provisions reading:

"*Article 36. Disputes.*

"Except as may otherwise be provided in the contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, or designee of Agency, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, Contractor may appeal by mailing or otherwise furnishing a written appeal addressed to the head of Agency, or such other persons as Agency may designate to receive such appeal and the decision of the head of Agency or his duly authorized representatives for the hearings of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith, be final and conclusive: *Provided,* That if no

such appeal to the head of Agency is taken, the decision of the Contracting Officer shall be final and conclusive. * * *"

(c) The telegram of July 18, 1957 by CCC to plaintiff reading:

"IN VIEW TEMPORARY DELAY IN ARRANGING FOR OCEAN SHIPPING SPACE FOR NONFAT DRY MILK CCC DESIRES TO EXTEND DELIVERY DATES YOUR CONTRACTS OR CONTRACT LD-DF 2449 FOR 2 WEEK PERIOD BEGINNING WITH SCHEDULED DELIVERIES WEEK OF JULY 22, 1957. ADVISE WHETHER EXTENSION ACCEPTABLE AS SOON AS POSSIBLE."

Plaintiff contends here, as it did before the Contracts Disputes Board, that the assessment of liquidated damages was improper for several reasons, which are considered seriatim:

*1. Delays in Delivery Were Due to Causes Beyond the Control and Without the Fault or Negligence of the Plaintiff.*

The record discloses that unusual weather conditions prevailed during the period in question. As a result, plaintiff had difficulty producing and acquiring the needed materials. The Contracts Disputes Board, however, in its Final Decision, found that although adverse weather conditions did prevail during the contract period, such were neither so severe nor so unusual as to preclude anticipation of them by plaintiff.

██ It is not the function of the Court to re-examine an administrative agency's determination of fact questions. Where substantial evidence in the Record supports a finding of fact, it may not be disturbed. The Record in the case at bar contains many pages of evidence as to the adverse weather conditions. We may not say, however, that the Board's conclusion is not supported by substantial evidence to the contrary. The Contracts Disputes Board reached a permissible conclusion in finding that the weather conditions did not excuse plaintiff from

meeting the delivery dates as set forth in the contract.

*2. The Rate of Liquidated Damages Was so Unrelated to Actual Damages as to Amount to a Penalty and There Were no Actual Damages Sustained by Defendant.*

 It is contended, in this connection, that the contract under consideration originally contemplated the acquisition of goods for *overseas* shipment, but that when shipment was later directed to an inland city, the defendant actually suffered no compensable damages. There is no dispute that the destination of the goods was changed from "overseas" to an inland city for storage. Plaintiff contends that the liquidated damages provision could be enforceable only when the goods are destined for overseas shipment because in such case it is essential that timely delivery be made so as to avoid the unnecessary tying up of ships. In other words, goods for export involve numerous problems of logistics, and a delay in the receiving the goods might have costly results. On the other hand, goods to be stored in an inland city do not present similar problems. So that, under such circumstances, argues plaintiff, a liquidated damages provision is no more than a penalty and is null and void. Reliance is placed upon the general rule that a provision for liquidated damages is unenforceable unless—

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm * * * is one that is incapable or very difficult of accurate estimation." Restatement, Contracts, Parag. 339(1).

The Court does not doubt the wisdom or validity of this general rule. What is doubted, however, is the application of the rule to the facts here. It has not been demonstrated that the change of place of delivery from "overseas" to an inland city for storage makes the liquidated damage provision a nullity. Many of the same problems, such as securing storage space and transportation of the goods, are present when delivery is made inland. It

also appears from the Record that the changing of the destination of the goods may well have resulted from the actions of plaintiff rather than of defendant. Plaintiff had asked for extensions of time, and, on some shipments, was late in making delivery. It is not unlikely that such delays, or notices of anticipated delays, required defendant to revamp its schedule necessitating the order for inland storage rather than overseas shipment. The change in circumstances necessitating the storage of these goods could not have the effect, under any circumstances, of nullifying the express agreement of the parties as to dates of delivery. The Contracts Disputes Board, in its final decision, stated:

"The liquidated damages provision of the contract, in the light of the circumstances under which it was negotiated and as applied to the deliveries under the contract, is enforceable."

The Court is in agreement. The amounts provided for as liquidated damages appear reasonable, and the circumstances under which the clause was applied do not operate to make it a penalty provision.

*3. The Contracting Officer Failed to Make a Prompt Decision and Defendant Failed to Terminate the Contract.*

Plaintiff made four requests for extension of delivery dates during September, October and November, 1957. It was not until September 8, *1958*, almost ten months later, that action was taken by defendant upon these requests.

 At that time, all requests for extension were denied. The plaintiff argues that such a delay abated the assessment of damages. Defendant concedes that if the contracting officer refused to make a decision under a disputes clause, such a refusal would constitute a breach of the contract. Brister & Koester Lumber Corp. v. U. S., 88 U.S.App.D.C. 197, 188 F.2d 986 (D.C.Cir.1951). Defendant contends, however, that a distinction exists between *refusing* to make a decision on a particular question, and *delaying* such decision. Such a distinction un-

doubtedly may exist under an appropriate fact situation. Whether the instant case presents the applicable facts, however, is not pertinent. Our view is that although a ten-month delay was apparently unreasonable, the delay did not detrimentally affect the conduct of the plaintiff so as to afford grounds for vitiating the contract.

The plaintiff has failed to demonstrate any injury or detrimental reliance on defendant's unreasonably delayed response to plaintiff's requests for time extensions.

*4. There Were in Fact No Delays Because of the Wording of Notice to Delivery and Corrected Notices to Deliver.*

In order to place this aspect of plaintiff's appeal in a proper setting, it is necessary to re-examine those provisions of the contract relating to the dates for delivery of the goods. The pertinent provisions contained in Plan A of Announcement LD-11 read as follows:

"7. DELIVERY: * * * Within three business days after the offered delivery date(s), the Commodity Stabilization Service Office * * will furnish shipping instructions for the milk. *Delivery shall be effected in accordance with such delivery instructions* within five business days after their receipt by the contractor, or within five business days after the offered delivery date(s), whichever is later. (Emphasis added.)

Plaintiff regards the phrase "delivery shall be effected in accordance with such delivery instructions" as a mandatory requirement of the contract. Plaintiff has a contractual right not to be required to deliver until the later of (1) five days after the receipt of the Notice to Deliver or (2) five days after the offered delivery dates in the contract. The difficulty in which plaintiff found itself is apparent by a close examination of the contents of the Notice to Deliver. Each of these Notices contains a provision in the delivery instructions entitled "Forward Not Later Than", followed by a blank space in which a date was to be inserted by defendant. The dates inserted by defendant in the Notices to Deliver were, for the production weeks for which liquidated damages were assessed, dates calling for delivery at a time earlier than either five days after receipt of the Notice to Delivery or five days after the offered delivery dates. By way of example, an examination of the dates involved in one of the several production weeks demonstrates that the offered delivery date in the contract plus five business days was September 13, 1957. The date of receipt of the Notice to Deliver plus five business days was September 10, 1957. And yet the "Forward Not Later Than" date contained in the Notice to Deliver was September 6, 1957. The following chart shows similar facts for the seventh, eighth, ninth and tenth production weeks—weeks for which liquidated damages were assessed:

| Notice to Deliver No. | Date Initially Issued | Production Weeks | Date Notice to Deliver Rec'd. + 5 Business Days | Offered Delivery Date, + 5 Business Days | Not Later Than Date in Notice to Deliver |
|---|---|---|---|---|---|
| 88566 | 8/30/57 | 7th – 9/2 –9/8 | 9/10/57 | 9/13/57 | 9/ 6/57 |
| 91552 | 9/ 6/57 | 8th – 9/9 –9/15 | 9/16/57 | 9/20/57 | 9/13/57 |
| 91663 | 9/12/57 | 9th – 9/16–9/22 | 9/23/57 | 9/27/57 | 9/20/57 |
| 95189 | 9/20/57 | 10th – 9/23–9/29 | 9/30/57 | 10/ 4/57 | 9/27/57 |

Plaintiff's principal contention is that a "Forward Not Later Than" date in the delivery instructions which is earlier than both of two other dates in the contract is a nullity and may be disregarded. That is, the contract calls for delivery in accordance with delivery instructions. When said instructions are at variance

with plaintiff's contractual date of delivery, it may not only disregard the "Forward Not Later Than" date but also the contractual delivery dates. This argument stems in large part from the language in the contract that "delivery *shall be* effected in accordance with such delivery instructions." Plaintiff would construe such provision as 1) requiring it to wait for valid delivery instructions, and 2) permitting it to disregard the contract dates of delivery until valid shipping instructions were received.

It would appear that the Contracts Disputes Board agreed in part with plaintiff's contention. In construing the delivery clause of paragraph 7, the Board in its interim decision laid down certain premises to determine whether delivery was late. These were expressed by the Board as follows:

"1. If delivery was effected prior to the expiration of the latest of the following periods or date, the petitioners will have complied with the delivery terms of paragraph 7 of said Announcement that '* * * the Commodity Stabilization Service office serving the territory in which the shipments originate will furnish shipping instructions for the milk. Delivery shall be effected in accordance with such delivery instructions * * *,' and liquidated damages would not be assessable:

"(a) Five (5) business days after receipt of the Notice to Deliver.

"(b) Five (5) business days after offered delivery date.

"(c) 'Forward Not Later Than' date if such a date is shown on the Notice to Deliver.

"2. If delivery was effected after the expiration of the latest of the periods or date hereinabove identified, liquidated damages are thereafter assessable."

Thus, although the Board held that deliveries after the latest of three applicable dates were subject to assessments for liquidated damages, the holding necessar-ily implies that the "Forward Not Later Than" date could be disregarded by plaintiff.

The final decision of the Board stated:

"(e) A 'Forward Not Later Than' date which was earlier than the specified contract delivery dates is not enforceable upon [plaintiff] because it would deprive [plaintiff] of its contractual right to ship within five business days after the receipt of Notice to Deliver or within five business days after the offered delivery date, whichever is later."

Thus, all parties agree that the "Forward Not Later Than" dates contained in the Notices to Deliver for the seventh, eighth, ninth and tenth production weeks could be disregarded by plaintiff and that no liquidated damages could be assessed for failure to deliver by the dates contained therein.

The major point of dispute between the parties is the Board's further finding that plaintiff was bound to deliver by the later of the two remaining dates even though it could disregard the "Forward Not Later Than" date.

The Board's point of view is set forth in its final opinion:

"The 'Forward Not Later Than' date was not considered by the parties as controlling and shipments after this date on Notices to Deliver were made by [plaintiff] and accepted by [defendant]. The Notices to Deliver 88566, 91552, 91663 and 95189 as initially issued are valid documents for the purpose of assessing liquidated damages."

Apparently the Board drew support for this interpretation of the contract from the conduct of the parties themselves:

"(d) The Notices to Deliver [not in issue here] issued to cover deliveries during the 1st and 3rd production weeks under the contract, each contained a 'Forward Not Later Than' date which was earlier than five days after the latest contract delivery date. In each instance [plaintiff] de-

livered subsequent to the 'Forward Not Later Than' date but within the time allowed by the contract. In those instances the [plaintiff] exercised its right to ship no earlier than the latest date under the contract and no liquidated damages were assessed. * * *

"Both [defendant] and [plaintiff] interpreted the contract as giving the [plaintiff] the right to deliver within the contract delivery dates even though the [plaintiff] did not deliver within the 'Forward Not Later Than' date, and under such circumstances no liquidated damages would be assessable. Both [defendant] and [plaintiff] understood that deliveries made after the latest of such dates would be subject to the assessment of liquidated damages."

In contrast to the position of the Board as set forth above and the position of defendant here, the Contracting Officer sided with plaintiff immediately after the interim decision of the Board. He stated:

"It is not clear to me, however, under what authority the [plaintiff] could have shipped later than the date directed under 'Forward not later than' in the notice to deliver. For example, a notice to deliver, No. 88566, dated 8/30/57, directed the [plaintiff] to 'Forward not later than 9/6/57,' while the contract permitted shipment as late as 9/13/57. Inasmuch as the announcement required delivery 'in accordance with * * * delivery instructions,' delivery could not have been made under this notice later than 9/6/57.

"Accordingly, I agree with the [plaintiff's] position that it was not required to make delivery under the terms of the original Notice to Deliver issued during the 7th through the 10th week, and that the corrected notices should be accepted as the original notices for the purposes of this appeal."

■ The question involved on this appeal is in reality a combination of law and fact. As to the factual matters in dispute, the Court should not attempt to re-examine findings which have some support in the evidence. But difficulty is encountered in determining who was the trier of fact below—the Contracting Officer or the Board? The Board found as a fact that the parties intended to disregard the "Forward Not Later Than" date. Implied in the Contracting Officer's letter quoted above favoring the plaintiff's position is a finding that such was not the intent of the parties. It is my view that the Board's findings should be accepted. The Contracting Officer's "decision" was made *after* the interim decision of the Board. By this time, the Board had already made its "findings" and it was not within the power of the Contracting Officer to effectively overturn these findings by disagreeing with them.

■ Furthermore, it does not appear that the phrase "in accordance with such delivery instructions" is *the* controlling language of the contract. No doubt it was inserted to set out in detail the instructions as to time and place of delivery, but it should not be read out of context. This language is followed by "within five business days after receipt by the contractor or within five business days after the offered delivery date(s), *whichever is later* * * *." (Emphasis added.) This phrase should control the time for delivery regardless of the insertion of an earlier date in delivery instructions. Plaintiff, by the terms of the contract, had a right to make deliveries after the date in the instructions if they were made by the later of the two dates. He cannot now insist on "proper" delivery instructions when such instructions were incorporated into the contract.

The Contracts Disputes Board reached a permissible conclusion based on substantial evidence in the Record before it. Its action was not arbitrary, capricious or without legal foundation.

The complaint is dismissed.