**ANTHONY GRACE & SONS, INC.**

**v.**

**The UNITED STATES.**

**No. 133-61.**

United States Court of Claims.

May 14, 1965.

Davis and Laramore, JJ., dissented in part.

David Fromson, Garden City, N. Y., for plaintiff.

David Orlikoff, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant. Mary J. Turner, Washington, D. C., was on the brief.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

In this action plaintiff seeks to recover its bid deposit and damages it allegedly incurred as a result of cancellation by defendant of commitments made by the Department of the Air Force to plaintiff for the construction of a military housing project under the Capehart Act.[1] The case is before the court on defendant's motion for summary judgment on the grounds that plaintiff has failed to exhaust its administrative remedies and has failed to state a claim for which relief may be granted.

This motion was referred to Trial Commissioner Richard Arens, under Rule 54(b), for his opinion and recommendations for a conclusion of law. Commissioner Arens has submitted an opinion and recommendations. The defendant sought review of both, and the case was set for argument. The plaintiff submitted on the briefs but the defendant presented oral argument.

I

The first issue is whether the plaintiff failed to exhaust its administrative

1. 42 U.S.C. §§ 1594–1594j; 12 U.S.C. §§ 1748–1748i. For a brief explanation of the procedures under the Capehart Act, see Anthony P. Miller, Inc. v. United States, 161 Ct.Cl. 455, cert. denied, 375 U.S. 879, 84 S.Ct. 149, 11 L.Ed.2d 111 (1963).

remedies because its appeal to the Board of Contract Appeals from the cancellation (and the refusal to return its deposit) was untimely (as the Board held). Commissioner Arens' opinion concludes that the appeal was not untimely and the Board erred in dismissing it on that ground. The court agrees (with slight modifications) with that portion of the Commissioner's opinion (set forth in Part III, infra) and adopts it, as so modified, as the basis for rejecting the defendant's argument that plaintiff is barred from suing in this court because it failed properly to exhaust its administrative remedy.

The second issue is whether, in any event, plaintiff states a cause of action. Defendant contends that, irrespective of the issue of exhaustion of administrative remedies, plaintiff may not maintain its action because under the terms of the letter of acceptability plaintiff could not refuse to "close" a Capehart contract over a disagreement on the administrative determinations of appropriate minimum wages for the housing project, and that such determinations are not subject to judicial review.

Plaintiff has pleaded in its petition that defendant "unilaterally altered the scope of work provisions" and issued "wage schedules in direct contravention of its contractual obligations," and that defendant's action made it impossible for plaintiff to continue in its efforts to perform under the contract. Plaintiff further contends that its interpretation of the plans and specifications is correct "in light of the interpretation given such plans and specifications by custom and usage in the trade."

Thus, the parties are in disagreement over the nature of the issue presented and, of course, the Armed Services Board of Contract Appeals, having reached its decision solely on the matter of the timeliness of plaintiff's appeal, did not consider any other issue.

The Trial Commissioner recommended that the decision on defendant's contention that plaintiff fails to state a cause of action should be resolved only after trial. In the Trial Commissioner's view, the issues are not now precisely framed; evidence as to the conduct of the parties may shed some light on the issues, and there are unresolved issues of fact.

Even where a motion for summary judgment meets the technical requirements for the granting of the motion, the court may in its discretion deny the motion. See Ct.Cl.R. 64; Fed.R.Civ. P. 56; Williams v. Howard Johnson's Inc. of Washington, 323 F.2d 102 (4th Cir. 1963); S. J. Groves & Sons Co. v. Ohio Turnpike Commission, 315 F.2d 235 (6th Cir. 1963). Denial of the motion is appropriate when the legal issues are of particular significance, or particularly complex, or where the legal issues can be intelligently resolved only upon a fully developed record. See Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948); Pacific American Fisheries, Inc. v. Mullaney, 191 F.2d 137 (9th Cir. 1951). We believe this to be a proper case for the exercise of that discretion.[2]

II

Having determined that the Armed Services Board of Contract Appeals improperly refused to consider plaintiff's appeal on its merits (Part III hereof), we must consider whether we should suspend action in this court and direct the plaintiff to return the case to the Board, or whether we should deny defendant's motion and remand the litigation to our Trial Commissioner.

2. See 6 Moore F.P. §§ 56.15 [6], 56.-16 (2d Ed. 1953), the former section comments at pp. 2158–2159:

"* * * the court must necessarily evaluate the character of the record in light of the legal issues; and it should take care not to adjudicate difficult or complicated legal issues, either of a private or public nature, upon an inadequate factual basis. A sound appraisal may demand that the motion be denied and that the case proceed to trial. * * *" See also United States v. Small, 24 F.R.D. 429 (S.D. N.Y.1959).

It is an accepted principle that where the administrative remedy is inadequate, a party will no longer be required to exhaust that remedy as a prerequisite to maintaining an action in court. Davis, Administrative Law, § 189 (1951).[3] This court has entertained an action without requiring further recourse to the contractual administrative procedures where the contracting officer has refused to render a decision as required by the contract or has delayed his decision excessively. Maxan Dress Corp. v. United States, 115 F.Supp. 439, 126 Ct.Cl. 434 (1953); United States Casualty Co. v. United States, 67 F.Supp. 950, 107 Ct.Cl. 46 (1946). The same rule has been applied where the head of the agency similarly erred. Southeastern Oil Florida, Inc. v. United States, 115 F. Supp. 198, 127 Ct.Cl. 480 (1953); Heid Bros., Inc. v. United States, 69 Ct.Cl. 704 (1930); Cape Ann Granite Co., Inc. v. United States, 100 Ct.Cl. 53, cert. denied, 321 U.S. 790, 64 S.Ct. 785, 88 L.Ed. 1080; Cf. Hele v. United States, 100 Ct.Cl. 289 (1943) and 103 Ct.Cl. 472 (1945).

In Southeastern Oil Florida, supra, the plaintiff had contracted to transport government gasoline. The contracting officer determined that the plaintiff was responsible for the contamination of some of the gasoline and withheld moneys due under the contract. The contractor pursued his remedies under the contract and appealed to the Secretary of the Navy. For 2 years the appeal was not acted upon, and the contractor filed suit. This court commented, 127 Ct.Cl. 480, 484:

> "Defendant argues that because plaintiff's appeal to the head of the department is still pending, this court has no jurisdiction of plaintiff's claim. It is true that a contractor must exhaust the administrative remedies provided in the contract before it is entitled to bring suit in this court. United States v. Blair, 321 U.S. 730, 735, [64 S.Ct. 820, 822, 88 L.Ed. 1039]; United States v. Joseph A. Holpuch Co., 328 U.S. 234, 240, [66 S.Ct. 1000, 1003, 90 L.Ed. 1192]. These cases also set forth the exception to this rule, however, which is that a contractor is not prevented from suing in this court where the administrative appeal procedure provided in its contract is, in fact, inadequate or unavailable. In the Blair case, the Supreme Court recognized that (p. 736 [of 321 U.S., p. 823 of 64 S. Ct.]):
>
> > " 'If it were shown that the appeal procedure provided in the contract was in fact inadequate * * * we would have a quite different case.'
>
> "Likewise, in the Holpuch decision, the Supreme Court stated that (p. 240 [of 328 U.S., p. 1003 of 66 S.Ct.]):
>
> > " 'And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court.'
>
> "In this case, the plaintiff having appealed to the head of the department, and the head of the department having failed for more than two years to indicate whether he would or would not take jurisdiction of the appeal, the plaintiff was justified in regarding the administrative appeal procedure as inadequate and in filing its suit in this court. Having filed its suit, it was not required to abandon that suit and resume the administrative procedure.

We must now query whether the decision in United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963) alters the rule announced in the cases cited above. Since the Bianchi case was handed down, this

3. See generally, Brister & Koester Lumber Corp. v. United States, 188 F.2d 986 (D.C.Cir. 1951); United States v. Blake, 161 F.Supp. 76 (E.D.N.C.1958); Wessel, Duval & Co. v. United States, 126 F.Supp. 79 (S.D.N.Y.1954).

court has decided that the failure of the contracting officer to perform his adjudicatory functions permits an action to be maintained in this court without any further administrative proceedings, C. J. Langenfelder & Sons, Inc. v. United States, Ct.Cl., 341 F.2d 600, February 19, 1965, H. B. Zachry Co. v. United States, Ct.Cl., 344 F.2d 352, April 16, 1965.[4] We believe that if a contracting officer's failure to act allows immediate recourse to the courts, it follows a fortiorari that a similar lack of action by a contract appeals board should also permit such immediate resort to the courts.

The decisions in Langenfelder and Zachry, supra, dictate that in the case before us, we retain the case for trial in this court.

We believe that this result is in accord with the Supreme Court's decision in the Bianchi case, supra. Justice Harlan, speaking for the majority in that case, made the following observation on the sanctions to be imposed by this court when confronted with an unacceptable administrative record. (373 U.S. 709, 717–718, 83 S.Ct. 1409, 1415):

> "* * * *Second,* in situations where the court believed that the existing record did not warrant such a course, but that the departmental determination could not be sustained under the standards laid down by Congress, we see no reason why the court could not stay its own proceedings pending some further action before the agency involved. Cf. Pennsylvania R. Co. v. United States, 363 U.S. 202 [80 S.Ct. 1131, 4 L.Ed.2d 1165]. Such a stay would certainly be justified where the department had failed to make adequate provision for a record that could be subjected to judicial scrutiny, for it was clearly part of the legislative purpose to achieve uniformity in this respect. And in any case in which the department failed to remedy the particular substantive or procedural defect or inadequacy, the sanction of judgment for the contractor would always be available to the court."

The foregoing comment must be read in the light of the Supreme's Court's policy to expedite the disposition of such litigation—a policy stated in the same opinion at page 717 of 373 U.S., at page 1415 of 83 S.Ct. as follows:

> "* * * [T]he consequences of such a procedure [duplication of trials] would in many instances be a needless duplication of evidentiary hearings and a heavy additional burden in the time and expense required to bring litigation to an end."

A suspension of proceedings in this court for additional action by an administrative board should be ordered only where the suspension will actually expedite handling of the litigation or where the Supreme Court has indicated that a stay of court proceedings is justified. It should be emphasized that we have no remand power in these cases. Therefore, where an appeals board has refused jurisdiction in a case, or where its prior decisions demonstrate that it will not entertain jurisdiction of

4. In cases where the court's decision was contrary to that of the administrative boards and the board had made no findings on the quantum of an equitable adjustment determined to be due, this court retained the case and permitted a trial on that issue, E. H. Sales, Inc. v. United States, No. 75–61, Ct.Cl., January 22, 1965. Jack Stone Co. v. United States, Ct.Cl., 344 F.2d 370, April 16, 1965.

But see, Utah Construction and Mining Co. v. United States, 339 F.2d 606, December 11, 1964, where the court resolved, on a hypothetical basis, the disposition of the concrete aggregate claim which had been rejected by the administrative board as untimely. The issue of whether to suspend proceedings was not, at that time, squarely before the court; the issue was only marginally raised by defendant and was not briefed. Since that time, in this and several other cases, we have had the benefit of argument, briefs, and more detailed reflection on the question. Therefore, the conclusion in the Utah case does not, in view of the circumstances under which it was made, foreclose our reconsideration of the issue.

a particular dispute, a return of the proceedings to the board is a useless gesture which will be productive only of further delay in the litigation.[5]

It is to be noted that in Bianchi, the Supreme Court did not have before it, nor did it discuss, a situation where a contract appeals board has refused jurisdiction. But the Court in that case squarely addressed itself to the problems of delay. Accordingly, we conclude that the retention of this case for trial in this court best accords with the enunciated policy of speeding contract litigation.[6]

III

Commissioner Arens' opinion on the timeliness of plaintiff's appeal to the Board of Contract Appeals, as modified and adopted by the court, is as follows:

On August 22, 1958, the Department of the Air Force issued an invitation for bids for the construction of 177 military Capehart housing units at Topsham Air Force Station in Maine. The invitation, after setting forth the purposes of the Capehart Act, provided in pertinent part:

> "4. The bidder should carefully examine the provisions of the form of Housing Contract attached hereto, including the Drawings and Specifications made a part thereof; visit the site of the housing projects; and fully inform himself as to all conditions and matters which can in any manner affect the financing of the construction and the constructing of the housing projects or their cost. Should the bidder find discrepancies in, or omissions from, such Drawings and Specifications or other documents attached hereto, or should he be in doubt as to their meaning, he should at once notify the Contracting Officer, Otis Air Force Base, Massachusetts, and obtain clarification prior to submitting a bid. Information given will be transmitted to all known interested bidders.
>
> "5. Under the provisions of Title IV of the Housing Amendments of 1955, as amended, the total principle [sic] amount of the mortgages is limited, among other things to the amount of the bid of the eligible builder. However, the Davis-Bacon Act and Section 212(a) of the National Housing Act as amended require that wages paid to laborers and mechanics be the prevailing wage as determined by the Secretary of Labor not more than ninety (90) days prior to the commencement of construction. Since more than ninety (90) days may elapse from the date of this Invitation For Bids to the commencement of construction, the bids called for by this Invitation For Bids will include a provision for adjustment of the dollar amount therein specified to reflect any difference between the tentative minimum wage schedule attached hereto and the applicable minimum wage schedule as finally determined by the Secretary of Labor. Any such adjustment will be in an amount determined by the Commissioner to reflect such differences, and the amount of the lowest acceptable bid and the FHA estimated total replacement cost of the projects will be amended in the amount so determined by the Commissioner; except that, if such an adjustment would increase the amount of the bid above the amount of any other statutory maximum applicable to the insurable mortgages, the eligible builder will

5. The Armed Services Board of Contract Appeals has consistently held that it did not have jurisdiction to review the decisions of the Federal Housing Commissioner on contracts such as that in issue here, Len Co. and Associates, 1962 BCA 17854 (ASBCA 1962); Anthony Grace & Sons, Inc., 1962 BCA 17882 (ASBCA 1962); see also Centex Constr. Co. v. United States, 162 Ct.Cl. 211 (1963).

6. See Schultz, Wunderlich Revisited: New Limits on Judicial Review of Administrative Determination of Government Contract Disputes, 29 Law & Contemp.Prob. 115, 127 (1964); Spector, Is It "Bianchi's Ghost"—Or "Much Ado About Nothing"?, 16 Ad.L.Rev. 265, 289 (1964).

have the option of reducing his bid to such statutory maximum or of withdrawing his bid.

* * * * *

"8. Each bidder is required to submit with his bid a certified check in the amount of $25,000, payable to the Treasurer of the United States, to insure that if he is the lowest acceptable bidder for the total of 177 family housing units he will perform the necessary preliminary steps and effect a closing with FHA within the time prescribed in the Letter of Acceptability, including the furnishing of an acceptable performance and payment bond. In the event the lowest acceptable bidder fails to effect a closing with FHA within the time prescribed, his deposit will be forfeited and become the property of the Government as damages unless the Department finds that he has made every effort to effect such closing and extends the time to effect such closing. If the lowest acceptable bidder effects a timely closing with the FHA the amount of his deposit will be refunded to him 24 hours after the initial closing with FHA. The deposits of unsuccessful bidders will be returned to them not later than 60 days after the opening of the bids. * * *

"a. 'Timely Closing' as referred to in this paragraph of the Invitation For Bids and closing period as referred to elsewhere in these forms is construed to be a period of approximately 60 days from the date of opening of bids.

* * * * *

"12. Bidders are advised that the maximum total of the insurable mortgages may not exceed the lesser of three items being (1) amount of the lowest acceptable bid, (2) FHA Total of the estimated replacement cost of the property or projects or (3) an average per family unit of $16,500 less the estimated value of any usable utilities within the property or projects where owned by the Department or furnished by other than mortgage proceeds. Attention is invited to FHA's Final Appraisal and Eligibility Statements attached hereto. The bidder will be required to pay the fees and costs prescribed in such statements.

* * * * *

"22. The eligible builder, and all his subcontractors, will be required to pay all mechanics and laborers employed for working directly upon the sites of the housing projects not less than the prevailing wages as determined by the Secretary of Labor. A tentative wage scale is attached hereto. Such tentative wage scale is, however, subject to revision prior to actual start of construction in accordance with Secretary of Labor requirements. For the effect of such revision see paragraph 5 above.

* * * * *

"Bid Form:

"3. The bidder understands that, if this bid is determined to be the lowest acceptable bid, the Department will issue to him a Letter of Acceptability in the form attached to the Invitation For Bids, and the bidder agrees that upon issuance of such Letter of Acceptability he becomes obligated to carry out its terms within the times therein stated, at his own expense, within the conditions of his bid security, and without further acceptance, award, advice or other action by the Department. Such obligations include an obligation to cause performance by the mortgagor-builder corporations, to be formed by the bidder, of each and every act required of it in the Letter of Acceptability, to cause the execution by said mortgagor-builder corporations of a Housing Contract containing the same terms, conditions, provisions and Drawings and Specifications as the specimen form of Housing Contract with good and sufficient surety or sureties as required therein, within the times specified in

and in accordance with the Letter of Acceptability.

* * * * *

"4. The Bidder represents that he is aware of the statutory requirements of Section 212(a) of the National Housing Act, as amended, and of the Davis Bacon Act that wages to be paid to laborers and mechanics employed in the construction of the projects are required to be not less than those contained in the prevailing wage determination of the Secretary of Labor, and that, in order to comply with these statutory provisions, the bid price is subject to increase or decrease by an amount determined by the Federal Housing Commissioner (hereinafter called the 'Commissioner') to represent the difference in the 'Total Estimate of Replacement Cost of the Total Project,' computed according to the wage schedule attached to the Invitation For Bids, and computed according to the wage schedule as amended by the 'prevailing wage determination' as that term is defined in Paragraph 19 of the specimen form of the Housing Contract attached to the Invitation For Bids. Moreover, the Bidder realizes that, if the amount of his bid as specified in the Letter of Acceptability, is thereby increased so as to exceed the maximum total amount of the insurable mortgages as determined by the Commissioner, the Bidder shall have the option of reducing his bid to the amount of the maximum total insurable mortgages as determined by the Commissioner, or of withdrawing his bid.

* * * * *

8. The bidder agrees that, if issued a Letter of Acceptability, and if he does not exercise the option of withdrawing his bid pursuant to Paragraph 4 above, he will commence the work called for by the Drawings and Specifications within 15 calendar days after the date of closing, and that he will complete the work called for by the Housing Contract as expeditiously as possible, but in no event later than 450 calendar days after date of closing.

"* * *."

Attached to the invitation for bids was a tentative minimum wage schedule which contained the following introductory language:

> "The latest wage determination made by the Secretary of Labor for the country in which the work is being performed is included herein. The complete determination is incorporated in the contract specifications regardless of whether the Contractor will employ all the classes of laborers and mechanics listed."

The schedule set forth the minimum rates of wages per hour for certain classes of laborers and mechanics, apprentices, building construction personnel, and heavy and highway construction personnel. The rates in the schedule for the heavy and highway construction personnel were lower than the rates for the building construction personnel. The schedule bore an expiration date of September 18, 1958.

There were also attached to the invitation for bids, specifications which defined the scope and situs of the work to be performed.

These specifications included a breakdown into "Section 1 on-site, site preparation" and "Section 2 on-site, Excavation, Filling and Back-filling for Building Construction." Section 1 of paragraph 1–18 of the specifications provided in part:

> "On Site
> Site Preparation
>
> "1–18 EXCAVATION, TRENCHING, AND BACKFILLING FOR UTILITIES SYSTEM:
>
> "(a) The work consists of furnishing all plant, labor, equipment, appliances, and materials, and in performing all operations in connection with excavation, trenching, and backfilling for utilities system, complete, in strict accordance with this

section of the specifications and the applicable drawings.

"(b) All excavation for utilities systems occurring within the enclosing walls or appurtenances of buildings or other structures and out to a line 5 feet outside of the walls or appurtenances thereof, is covered under EXCAVATION AND GRADING FOR BUILDING CONSTRUCTION, and is not included under this section of the specifications.

"* * *."

Section 2 of paragraph 2-01 of the specifications provided:

"2-01 Scope

"(a) Work Included. The work covered by this section of the Specifications consists in furnishing all plant, labor, equipment and materials and in performing all operations in connection with excavating, filling, backfilling and rough grading, complete for the building and for building utilities lines to a point five (5) feet outside the foundation line, and other related items in strict accordance with this Section of the Specifications and the applicable Drawings, and subject to the terms and conditions of the contract.

"(b) Work not Included. Clearing and grubbing, excavation, filling and grading for parking areas, roads, walks, drainage, sewers and other sub-surface utilities systems, and excavation for the building utilities beyond planes five (5) feet outside the building line are not included under this Section of the Specifications. Stripping of topsoil is specified in Section 1, Site Preparation."

On or about September 30, 1958, plaintiff submitted its bid to construct the housing project at a base price of $2,653,022, with an additional price of $213,071, for certain additive alternatives, or at a total price of $2,866,093. Plaintiff submitted with its bid a deposit, as required by paragraph 8 of the invitation for bids, in the amount of $25,000.

On October 29, 1958, Mr. George S. Robinson, deputy special assistant for installations, Department of the Air Force, sent to plaintiff a "Letter of Acceptability" in which plaintiff was advised that its bid of $2,866,093, for the housing project, including the additives, was the lowest acceptable bid; and, in which, plaintiff was further advised of its obligations to complete a number of arrangements before the "closing" which was scheduled on or before January 8, 1959. The letter of acceptability specified that among the arrangements which plaintiff was to make prior to the closing was the following:

* * * * *

"n. Make application through the Contracting Officer, Otis Air Force Base, Massachusetts, to the Secretary of Labor for an appropriate wage determination, if necessary, (on a Department of Labor Form DB-11 which will be supplied upon request by the Contracting Officer) for use in the construction of the project, and furnish a copy of such wage determination to the Contracting Officer and the Commissioner. Such wage determination will be used by the Commissioner to increase or decrease the bid price in the manner specified in your bid."

The letter of acceptability also provided in part:

"2. Failure to perform all obligations prior to the time prescribed for closing will be just cause for cancelling all commitments undertaken with you in connection with the housing project and for the recovery under your bid security of liquidated damages in the sum of $25,000, together with actual damages to the Department, such actual damages to be itemized and determined by the Contracting Officer, whose decision will be reduced to writing and furnished to you by mail or otherwise. Such decision shall be final and conclusive unless, within 30 days from the receipt thereof, you appeal in

writing to the head of the Department or his duly authorized representative, and his decision shall, unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence, be final and conclusive. In connection with any appeal under this paragraph you will be afforded an opportunity to be heard and to offer evidence in support of your appeal.

* * * * *

"6. You are required to be ready for the closing on or before January 8, 1959, and your failure to do so will indicate your inability to carry out the obligations and terms of your bid and this Letter of Acceptability, provided that the Contracting Officer may extend the date of closing in writing upon your submission of written documented proof that the delay was caused by conditions beyond your control."

On November 19, 1958, pursuant to the obligations specified in the letter of acceptability, plaintiff made a request of the Secretary of Labor for an appropriate wage determination. On January 28, 1959, there were issued by the Secretary of Labor two separate wage rate decisions, with expiration dates of April 29, 1959. One of the decisions contained a description of work as "General Construction of 177 family housing units" and set forth rates for laborers and mechanics, apprentices and building construction personnel. The other decision contained a description of work as "Construction of Streets and Roads in connection with Capehart Housing" and set forth rates for heavy and highway construction personnel. As in the instance of the tentative minimum wage schedule which was attached to the invitation for bids, the rates set forth in the wage rate decisions for the heavy and highway construction personnel were lower than the rates for the building construction personnel.

After receiving the wage rate decisions of the Secretary of Labor, plaintiff concluded that the effect of the decisions was to require it to pay the higher building construction rates for a greater area of the work than provided by the specifications, and that plaintiff's bid price should be increased, in accordance with the letter of acceptability, to reflect the higher rates. In essence, plaintiff's position was that under the specifications it was required to pay the higher building construction rates for work to a point 5 feet outside the building foundation line, and that for work beyond this point it was required to pay only the lower heavy and highway construction rates; but, that under the descriptions of work contained in the decisions it was required to pay the higher building construction rates for all work beyond the above-indicated point, except for work covering construction of streets and roads. Because of difference between the parties arising out of the foregoing decisions, the original closing date of January 8, 1959, set forth in the letter of acceptability, was extended on several occasions while conferences were held by the parties on the matter.

By letter of March 18, 1959, the director of the Federal Housing Administration advised plaintiff that there would be an increase in the wage rates allowed plaintiff in some categories where the promulgated rates had been increased, but that there had been no change in the rates for either heavy and highway personnel or for building construction power operators and that he had not been able to justify an increase based upon plaintiff's interpretation.

On May 29, 1959, following exchanges of correspondence and meetings of the parties, plaintiff requested a determination of the Department of the Air Force relative to plaintiff's interpretation of the pertinent documents from which plaintiff concluded that it was entitled to an additional increase of $85,834 in bid price. By letter of June 26, 1959, plaintiff was advised by George S. Robinson, deputy special assistant for installa-

tions, Department of the Air Force, that he did not concur in plaintiff's position. The letter continued:

"If you intend to effect a closing, you should advise me promptly in order that the Letter of Acceptability may be amended. If you decide not to effect a closing, or advice as to your intention is not withdrawn in 10 days, the letter of acceptability will be withdrawn."

On July 2, 1959, plaintiff wrote to Mr. Robinson that it did not approve of his decision; that, as a result of the delay in the matter, plaintiff had sustained considerable monetary losses; and, that plaintiff was not in a position to set a definite closing date until the matters were resolved.

By letter dated October 1, 1959, Mr. Robinson advised plaintiff that its letter of July 2, 1959, "indicating an unwillingness to set a closing date constitutes a failure on your part to perform your obligations under your bid and under the letter of acceptability." The letter continued:

* * * * *

"3. Accordingly, pursuant to paragraph 2 of the letter of acceptability, the Department hereby cancels all commitments undertaken with you in connection with the housing project, reserving all its rights with respect to the recovery of damages."

By letter dated October 7, 1959, addressed to Mr. Robinson, plaintiff, through its counsel, denied that it had indicated an unwillingness to set a closing date, charged the Air Force with the responsibility for the then existing problems, requested return of the bid deposit, and stated that plaintiff "is reserving all of its rights with respect to recovery of damages due to the failure of the Department of the Air Force to comply with all of the bid instructions and regulations thereby creating the situation that exists."

By letter dated October 19, 1959, Mr. Robinson replied to plaintiff's counsel that the cancellation of the commitments was compelled by plaintiff's "repeated refusals to perform its obligations under its bid and the Letter of Acceptability, with the result that it was necessary to revise the plans and rebid the project," and that the request for the return of the bid deposit was denied. For some unexplained reason, the letter of October 19, 1959, did not reach plaintiff's counsel, who, prompted by concern that he had received no reply to his letter of October 7, 1959, made inquiry by telephone of defendant on December 4, 1959, and was then furnished a copy of the letter of October 19, 1959, which he received on December 9, 1959.

By letter dated December 16, 1959, plaintiff's counsel wrote to the Secretary of the Air Force as follows:

"As counsel for Anthony Grace & Sons, Inc., I have been requested to appeal the decision of Mr. George S. Robinson dated October 1st, 1959.

"On October 7th, 1959, I formally appealed the decision in Robinson's letter dated October 1st, 1959 and in my reply requested the return of my client's bid deposit check and also set forth facts in contradiction to Mr. Robinson's allegations. Hearing nothing further, on December 4th, 1959, I called the office of the Department of the Air Force, and spoke with Mr. Samuel Hanenberg concerning a reply to my appeal dated October 7th, 1959. I thereafter, on December 9th, 1959, received a letter from Mr. Hanenberg wherein he furnished me with a copy of a reply sent to my office by Mr. Robinson on October 19th, 1959. This letter was never received by my office.

"You are hereby notified of my intention to appeal the decision of Mr. Robinson to withdraw and cancel the Letter of Acceptability dated October 29th, 1958 and his refusal to return the $25,000.00 bid deposit. I am of the opinion that the facts and circumstances as set forth in my letter forwarded to Mr. Robinson on October 7th, 1959, clearly sets forth that

the delays caused by the Government Agencies involved made it impossible for the builder to comply with the terms of the Letter of Acceptability.

"In view of the aforementioned, the Letter of Acceptability should have been terminated for the convenience of the Government and the $25,000.00 bid deposit returned to Anthony Grace & Sons, Inc.

"I request that this Notice of Appeal, as previously set forth in my letter dated October 7th, 1959 be processed in accordance with the Rules of the Armed Services Board of Contract Appeals. Upon receipt of Notice of Docketing I will file a formal Bill of Complaint.

"I sincerely request that this appeal be expedited in order that a hearing be held at the earliest possible date."

By letter dated December 22, 1959, the procurement contracting officer advised plaintiff that Mr. Robinson had been acting in his behalf in regard to cancellation of the commitments and that he agreed with the action taken by Mr. Robinson.

The letter of December 16, 1959, to the Secretary of the Air Force from plaintiff's counsel was docketed by the Armed Services Board of Contract Appeals on December 31, 1959. Thereafter, the government moved to dismiss the appeal on the grounds that Mr. Robinson's letter of October 1, 1959, canceling the commitments undertaken with plaintiff, was "an appealable decision"; and, that no written appeal was taken from that letter or from Mr. Robinson's letter of October 19, 1959, within 30 days, as provided by paragraph 2 of the letter of acceptability.

Plaintiff contended before the Board that the letter of October 1, 1959, from Mr. Robinson was not a final decision within the "disputes clause" (paragraph 2) of the letter of acceptability, but that, nevertheless, the letter of October 7, 1959, from plaintiff's counsel did constitute an appeal; that the only correspondence from the government which constituted an appealable decision within the disputes clause was the letter from Mr. Robinson of October 19, 1959, and that since that letter was not received until December 8, 1959, the letter of December 16, 1959, from plaintiff's counsel containing the appeal notice was timely. Plaintiff also contended that Mr. Robinson, the deputy special assistant for installations, who signed pertinent letters on defendant's behalf was not the contracting officer for the purposes of the disputes clause, and that plaintiff had already filed its appeal by the time the contracting officer had, by his letter of December 22, 1959, made his decision.

The Board concluded that the letter of October 1, 1959, from Mr. Robinson constituted an appealable decision and was at the time so regarded by plaintiff; and that the letter of October 7, 1959, from plaintiff's counsel did not contain "a then present intent * * * to invoke the right of appeal," and, hence, did not constitute an appeal within the disputes clause. Since the December 16, 1959, letter from plaintiff's counsel containing the appeal notice was after the period of 30 days from the October 1, 1959, letter, the Board found that the appeal was not timely. Regarding the status of Mr. Robinson, the Board stated in effect that he had been "the Government's representative in all dealings of legal consequence between the parties," had signed the invitation for bids, the letter of acceptability, and various other pertinent letters, including the letter from which plaintiff contended it had appealed, and that the contracting officer "was at all times a virtual stranger" to plaintiff.

Accordingly, the Board, on June 29, 1960, granted the government's motion and dismissed the appeal.

In considering the issue of timeliness of plaintiff's appeal to the Armed Services Board of Contract Appeals, it is apparent that the question presented, namely, interpretation of the provisions of the contract documents which set forth the specifics of an appeal and the cor-

responding interpretation of the effect of letters which allegedly constituted "decisions" and/or "appeals," is a question of law; hence, it and related factual issues are to be resolved independently by the court even though the sole record before the court is the administrative record. P. L. S. Coat & Suit Corp. v. United States, 180 F.Supp. 400, 148 Ct.Cl. 296 (1960); Beacon Construction Co. v. United States, 314 F.2d 501, 161 Ct.Cl. 1 (1963); WPC Enterprises, Incorporated v. United States, 323 F.2d 874, 163 Ct.Cl. 1 (1963); Stein Bros. Mfg. Co. v. United States, 337 F.2d 861, 162 Ct.Cl. 802 (1963); Wingate Construction Co. v. United States, Ct.Cl. January 24, 1964.

The parties are agreed that the governing provisions of the contract documents regarding an appeal appear in paragraph 2, the "disputes clause," of the letter of acceptability which, though heretofore set forth, bears repeating for closer examination, as follows:

> "2. Failure to perform all obligations prior to the time prescribed for closing will be just cause for cancelling all commitments undertaken with you in connection with the housing project and for the recovery under your bid security of liquidated damages in the sum of $25,000, together with actual damages to the Department, such actual damages to be itemized and determined by the Contracting Officer, whose decision will be reduced to writing and furnished to you by mail or otherwise. Such decision shall be final and conclusive unless, within 30 days from the receipt thereof, you appeal in writing to the head of the Department or his duly authorized representative, and his decision shall, unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence, be final and conclusive. In connection with any appeal under this paragraph you will be afforded an opportunity to be heard and to offer evidence in support of your appeal."

In light of the foregoing disputes clause, let us turn to the pertinent language of the letter of October 1, 1959, to plaintiff from Mr. Robinson to determine if there was therein a "decision" which would become "final and conclusive" unless appealed from within 30 days. This pertinent language reads:

* * * * *

> "3. Accordingly, pursuant to paragraph 2 of the letter of acceptability, the Department hereby cancels all commitments undertaken with you in connection with the housing project, reserving all its rights with respect to the recovery of damages."

A fair reading of the provisions of the disputes clause compels the conclusion that the decision of the contracting officer should include not only language canceling the commitments, but also language setting forth a conclusion regarding recovery of the bid security and itemization of such actual damages which the contracting officer determined should be recovered.

It is clear from the pertinent language of the October 1, 1959, letter that all of the elements of a decision required by the disputes clause are not present, because the only reference to damages (whether liquidated or actual) is that defendant was "reserving all its rights with respect to the recovery of damages." Upon reading this letter, plaintiff could not tell whether defendant had decided to recover liquidated damages, whether defendant was claiming actual damages or in what amount, or even when defendant expected to reach a conclusion as to liquidated or actual damages. Conceivably, plaintiff could have concluded that if there was to be no recovery sought by defendant of liquidated damages or of actual damages, it would be satisfied for the commitments to be canceled and would not appeal; but, plaintiff could not make an intelligent determination on the matter from the contents of the letter. It is conclud-

ed that the letter did not constitute a "decision" within the disputes clause, even though, as defendant points out, plaintiff in subsequent correspondence did refer to the "decision" in the October 1, 1959, letter. Having reached this conclusion, it is unnecessary to consider whether or not the letter of October 7, 1959, from plaintiff's counsel requesting return of the bid deposit and advising that plaintiff was "reserving all of its rights with respect to recovery of damages" constitutes an appeal, because the letter from plaintiff's counsel of December 16, 1959, which admittedly constituted an appeal was within the 30-day period after the receipt by plaintiff's counsel on December 8, 1959, of defendant's letter of October 19, 1959. It is likewise unnecessary to consider the question raised by plaintiff as to the status of Mr. Robinson, the deputy special assistant for installations.

It is accordingly concluded that plaintiff did make timely appeal and, therefore, did exhaust its administrative remedies, and is entitled to seek relief in this court.

IV

On the *foregoing* basis, *defendant's* motion for summary judgment is denied. The case is remanded to the Trial Commissioner for further proceedings in accordance with the court's opinion.

DAVIS, Judge (dissenting in part):

I agree with Parts I and III of the court's opinion, but I dissent from Part II. We are required, I think, by the rationale of United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), to give the Board of Contract Appeals the opportunity to consider on the merits the issues brought before it by the plaintiff's appeal to that Board under paragraph 2 of the letter of acceptability. The holdings prior to Bianchi support the action which the court orders today, but that ruling established new guideposts calling upon us to reappraise our earlier position.

In Bianchi the Supreme Court held that, in general, the boards, not the courts, are to be the fact-finders on issues of liability within their contract area of competence. The Court declared, expressly, that the "determination of the finality to be attached to a departmental decision on a question arising under a 'disputes' clause must rest solely on consideration of the record before the department" (373 U.S. at 714, 83 S.Ct. at 1413) even where "the administrative record is defective or inadequate, or reveals the commission of some prejudicial error" (373 U.S. at 717, 83 S.Ct. 1415). To me that means that, where a board has committed the prejudicial error of refusing a timely appeal,[1] the court should "stay its own proceedings pending some further action before the agency involved" (373 U.S. at 717–718, 83 S.Ct. at 1415). The essential principle is that, wherever possible, the evidence appropriate to an issue of liability under the Disputes clause should be taken by the board rather than the court. Certainly, a board, told by this court that it was wrong to dismiss an appeal as untimely, would undertake to hear and consider the case on its merits. We cannot assume otherwise; but if the board did continue to refuse, "the sanction of judgment for the contractor would always be available to the court" (373 U.S. at 718, 83 S.Ct. at 1415).[2] The delay in

1. Such a case is also one in which "the department had failed to make adequate provision for a record that could be subjected to judicial scrutiny" (373 U.S. at 718, 83 S.Ct. at 1415).

2. In this instance there is no reason to think that the Board will reject the appeal on grounds other than untimeliness. The Board clearly has jurisdiction over the claim for return of the bid deposit. It will not, under its consistent practice, pass upon the correctness or the validity of the determination by the Federal Housing Administration adjusting the bid price after the Secretary of Labor issues a new wage determination. Nor will the Board review the correctness or the validity of the Labor Department's wage determination. The Board can, however, pass initially

now having a hearing on the merits before the board will not necessarily be any greater than in now having a trial on the merits before our Commissioner. Even if it is, the rationale of Bianchi, as I understand it, gives predominance to the finding of facts (on the issues of liability) at the administrative level.

Since Bianchi, this court has tried contract issues of fact for itself (i. e., factual questions arising from a controversy within the Disputes clause) only where the remaining problem was solely one of damages and the board had not considered or taken evidence on damages, or the amount of recovery, because it had decided against the contractor on the merits. See Stein Bros. Mfg. Co. v. United States, 162 Ct.Cl. 802, 337 F.2d 861 (1963), and succeeding cases. That line of decisions, with which I agree, rests on the clear demarcation between issues relating to liability and those concerning the measure of recovery. That distinction has been embodied in our own rules (Rule 47(c)), is found at many other places in the law, and represents an established and convenient boundary which can appropriately continue to be utilized after Bianchi to dispose of a tag-end issue of amount of recovery. But in my view it trenches upon the Wunderlich Act, as interpreted in Bianchi, to extend the same rule to instances in which a board refuses to decide the merits of a case because it errs as to its jurisdiction, the timeliness of an appeal, or some similar threshold question. Under Bianchi, the board should decide the merits of the cases properly before it. If it makes an error in that respect, it does not lose jurisdiction or the court gain it exclusively. After the court corrects the error, it should let the controversy on the merits proceed before the board until the facts have been properly determined.

Neither C. J. Langenfelder & Son, Inc. v. United States, Ct.Cl., 341 F.2d 600, decided Feb. 19, 1965, nor H. B. Zachry Co. v. United States, Ct.Cl., 344 F.2d 352, decided April 16, 1965, is a precedent for what the court does today. In both, a contracting officer failed to decide an issue. Since the contract impliedly requires a reasonably prompt determination, a refusal to decide is a serious breach of the contract, entitling the contractor to bring suit to redress the failure. In those circumstances the contractor need not further pursue his administrative remedies before commencing an action. But the court did not hold in either case that, once suit had been begun, the facts on which the merits of controversies (within the Disputes clause) are to be resolved should not be presented to, and found by, the boards but are for this court alone. In Langenfelder, the court based its factual findings on the administrative record before the board. In Zachry, the court was not asked to stay proceedings to allow a board to determine the facts; the dictum that the plaintiff was excused from pursuing his administrative remedies was coupled with an express refusal to decide that the board had any jurisdiction over the matter.[3] Neither decision, in my view, supports the court's present ruling.

On the other hand, the refusal to suspend proceedings to allow the Board to consider the merits of plaintiffs' appeal is directly contrary to the recent, and unanimous, position of the court in Utah Constr. & Mining Co. v. United States, Ct.Cl., 339 F.2d 606, decided Dec. 11,

upon other issues involved in plaintiff's appeal. For instance, the Board can consider the crucial question of the correctness of plaintiff's interpretation of the contract plans and specifications—as they bear upon the wage determinations. The Board can also pass upon the meaning of the wage determinations. If plaintiff's interpretations are erroneous, there is clearly no basis either for recovery of the deposit or for damages. If those interpretations are correct, other issues may be presented.

3. It makes a difference, too, that in such cases the contracting officer frustrates the entire administrative process, at its outset, by refusing to make any determination. A legal error by an appellate board, after facts have been found by the contracting officer, is different in character.

1964. The Board of Contract Appeals had dismissed the contractor's appeal, on the "concrete aggregate claim" in that case, on the ground of untimeliness. The majority of the court specifically ruled that if the claim was not for breach of contract but within the Disputes clause—and if the Board was wrong on the timeliness of the appeal—then the evidence on the merits should *not* be taken in this court but "we should suggest to the board that it consider it [the claim] on the merits and suspend proceedings here until it has a reasonable opportunity to do so." 339 F.2d at 613. My separate opinion agreed with that position. Slip op., p. 19, 339 F.2d at 618–619. The Chief Judge concurred in the result. Now the court overrules that unanimous portion of Utah Construction.

LARAMORE, Judge, joins in the foregoing dissenting opinion.