Durfee, Judge,
delivered the opinion of the court:
This is an action for damages representing alleged loss by plaintiff arising out of alleged breach of contract for the purchase by General Services Administration from plaintiff of two lots of tungsten concentrate metal in the form of Wolframite, which was to be mined in Bolivia and exported for delivery on board vessels at Mollendo/Matarani, Peru.
Plaintiff asserts, without dispute, that it is a corporation organized and existing under the laws of the Republic of Bolivia, which affords to citizens of the United States of America the right to prosecute claims against it, and accordingly, this court has jurisdiction of the claim.
Although plaintiff objected to defendant’s motion for summary judgment, plaintiff did not request that it be permitted to make a countermotion until the oral argument before the court. Without objection by defendant, this request was granted.
Seventy-two consecutively numbered lots of the tungsten were delivered and paid for according to the contract provisions prior to June 30,1957. As to these 72 lots, there is no controversy. In May, 1957 the parties agreed to extend the time for deliveries of 40,000 short-ton units from June 30th to September 30th, 1957.
Upon refusal by the Contracting Officer to accept delivery of Lots 76 and 77 because he stated that plaintiff had failed to deliver them on or before the final delivery date of September 30,1957, as provided in the extended contract, plaintiff appealed to the Board of Contract Appeals on May 27, 1959. The Board denied the appeal on the merits, but also stated that the appeal was untimely filed. However, defendant here at the time of oral argument before the court, withdrew its defense that plaintiff had failed to exhaust its administrative remedy because its appeal to the Board was untimely. Accordingly, we are called upon to review the Board’s denial of plaintiff’s appeal only in order to determine whether the Board was arbitrary or capricious, or so grossly erroneous as to necessarily imply bad faith, or not *811 supported by substantial evidence, as now alleged by plaintiff.
The contract contained tbe usual “General Conditions for Strategic and Critical Materials and Services” which provided in part:
3. Time of Deli/uery. The materials, supplies or services described in the contract shall be delivered within the time provided for in the schedule of deliveries.
The Schedule of Deliveries under the contract provided:
The undersigned agrees to furnish the following on the terms specified on this page and on the continuation sheets, numbered 2 to 13, inclusive, and general conditions attached hereto, and made a part hereof, incl/udmg delivery F.O.B. vessel South American West Coast Port in Chile and/or Peru. [Emphasis supplied.]
Section 7 of the Special Articles of the Contract provided in part:
7. Loading and Storage:
The contractor shall designate the South American port where the material is to be loaded aboard ocean carrier. The costs of loading aboard vessel shall be for the account of the contractor.
a. The contractor shall forward in writing to the Government a Notice of Availability when each shipment is ready for loading. The Notice of Availability shall specify the amount of material available, the the time and the place at which such material will be ready for loading.
Section 13 of the Special Articles provided:
13. Shipping Instruction:
The contractor shall furnish airmail advice to the Director, Storage and Transportation Division, General Services Administration, Emergency Procurement Service, 7th and D Streets, S.W., Washington 25, D.O. at least twenty (20) days prior to the time each lot is ready for shipment from the foreign port in order that the Government may arrange for ocean transportation, and shall include the quantity, approximate weight, location and date of availability. A copy of such notice shall be sent to the Chief, Inspection Division, General Services Administration, Federal Supply Service, 7th and D Streets, S.W. Washington 25, D.C. so that arrangements may be made for inspection, weighing and analysis of the material in the United States.
*812 The Government shall furnish complete advice of all bookings to the contractor or its agent and shall also furnish any required instructions.
The contractor, without additional expense to the Government, shall act as Forwarding Agent and shall arrange for loading of the material aboard vessel at the foreign port and shall obtain for the Government shipping documents indicating the General Services Administration, Emergency ’Procurement Service, as the shipper and consignee, and shall notify the Government by airmail of all such loading. * * *
As to Lot 76, we find that plaintiff is entitled to recover. Plaintiff sent its Application for Shipping Instructions and Notice of Availability of Lots 75 and 76 to defendant on September 16, 1957, and GSA on the same date confirmed arrangement for a firm booking on the S.S. Santa Ines at Mollendo/Matarani, Peru, “date of sailing 9/25/57.” Lot 75 arrived at the port and was loaded aboard the vessel, and defendant has paid plaintiff in full.
On September 26, 1957, the day after the scheduled date of sailing of the S.S. Santa Ines, plaintiff notified GSA that Lot No. 76 had not arrived in time to reach the Santa Ines, and that this lot was provisionally booked on another ship, the S.S. Santa Regina, loading at Mollendo/Matarani, Peru, on October 7,1957. On the same date, September 26th, plaintiff forwarded to GSA the Application for Shipping Instructions and Notice of Availability in substitution for the Application and Notice previously mailed by plaintiff to GSA on September 16,1957. Lot 76 arrived at the port on the morning of September 30,1957, and was available on that date for delivery under the contract. Although the notice of availability for shipment of Lot 76 was not furnished airmail advice to defendant twenty days prior to the time Lot 76 was ready for shipment from the foreign port, as required under section 13 of the Special Articles of the Contract, this late notice was not a material failure by plaintiff to comply with the contract. Plaintiff alleges that this twenty-day notice requirement was not considered by plaintiff, its agent, or by defendant, as controlling, and was not adhered to by them. Defendant admits that these special articles of the contract (7a and 33) were not fully complied *813 with, and it is apparent from the conduct of both parties throughout all of the shipping transactions as alleged in the pleadings that strict compliance with the twenty-day notice requirement was waived repeatedly by the Government, and not regarded as essential to performance of the contract.[1]
The Board of Contract Appeals found that appellant failed to make proper deliveries of Lots 76 and 77 during the life of the contract, and that the Government was not required or permitted to accept delivery of Lots 76 and 77 after the date on which the contract expired, September 30, 1957. As to Lot 76, defendant’s motion alleges that “By letter dated October 18,1957, to the contracting officer, plaintiff stated that Lot 76 had arrived at Moliendo during the morning of September SO, 1957 and could not be loaded since the Santa Ines sailed on September 25, and no other vessel was available on arrival of Lot 76.” This allegation is in conformity with the findings of the Board of Contract Appeals.
Although the Schedule of Deliveries under the contract provided that plaintiff was to furnish the tungsten under the terms specified “including delivery F.O.B. vessel South American West Port” the contract terms also required defendant to provide and designate the vessel by proper shipping instructions. The Government did issue shipping instructions, and plaintiff delivered Lot 76 to the shipping dock in compliance with these instructions on or before September 30th — the expiration date of the contract. The essence of defense is that although plaintiff complied with the shipping instructions of the Government’s authorized official as to Lot 76, and within the life of the contract, it did not deliver the tungsten “F.O.B. vessel” within this period.
As alleged by defendant, and found by the Board of Contract Appeals, the employees of the Government who had charge of its shipping arrangements had no authority to amend or to waive any of the provisions of the contract, or to issue shipping instructions, and make bookings for lots of *814 materials “which were ofered, for delivery after the contract period expired?
Plaintiff offered Lot 76 for delivery at port on the morning of September 30, before the contract expired, and we deem this to be sufficient performance under the particular facts in this case to entitle plaintiff to recover as to Lot 76. Adequate advance notice of that shipment was given by plaintiff, and in those circumstances defendant bore the burden and risk of a ship’s being available. Conversely, however, plaintiff is not entitled to recover damages for defendant’s failure to accept Lot 77. On September 26, the same day that plaintiff notified GSA that Lot 76 had not arrived in time to be shipped, plaintiff also notified GSA by telegram that “lot 77 is enroute to port” from Bolivia. Plaintiff also sent the GSA the requisite Application for Shipping Instructions and Notice of Availability on that date. Defendant, however, refused to accept shipment of Lot 77 for the same reason that acceptance of Lot 76 was refused, i.e., defendant contended delivery was not made before the September 30 expiration date. We hold in this instance that defendant was correct. The Board record shows that Lot 77 was not delivered to the port by September 30, and in fact, it did not arrive until October 2. The failure to deliver by September 30 was a fatal defect in performance. The contract expired on that date, and offer of delivery was not made until two days later when the lot reached the port. As we stated in the prior paragraph, the GSA shipping agents had no authority to make bookings or issue shipping instructions for lots which were offered for delivery after the contract expired. Defendant’s refusal of Lot 77 was quite proper.
One further point remains for discussion. Defendant has pleaded a counterclaim that must be resolved, since we construe plaintiff’s oral motion for full or partial summary judgment as covering the counterclaim. Defendant contends that the extension of the contract from June 30 to September 30, 1957, was illegal and that it is entitled to recover partial payments of all lots shipped and paid for between these dates. This argument has little merit. Though not bound by the Board’s decision in this breach action, we agree with its rationale in regard to the contract extension. It stated that *815 consideration for the extension flowed both ways. Plaintiff acquired an extra 90 days to perform. Defendant, in turn, was relieved of an obligation to accept delivery of any quantities of tungsten in excess of 40,000 short tons. .‘(The original contractual requirement contained a 70,000 short-ton maximum.) The extension was therefore quite legal, and defendant’s counterclaim must be dismissed.
Accordingly, we hold as follows:
(1) Plaintiff is entitled to recover damages for defendant’s breach in failing to accept Lot 76. Plaintiff’s motion for summary judgment is granted in regard to Lot 76. The amount of recovery will be determined pursuant to Rule 47 (c).[2]
(2) Defendant’s motion for summary judgment is granted in regard to Lot 77, and as to this portion of the claim the petition is dismissed.
(3) Defendant’s counterclaim is dismissed.

 For example, the first notice of availability and application for shipping instructions as to Lots 75 and 76 was not sent until September 16, 1957. GSA confirmed a firm boohing for September 25th, 1957 and Lot 75 was shipped on that date, and later paid for.

 Although plaintiff sought an administrative remedy, the recovery sought is damages for breach (failure to accept delivery). There was no administrative remedy available under the terms of the contract. Damages must therefore be determined by this court, and not the administrative agency. The recent Supreme Court decision in United States v. Anthony Grace & Sons, Inc., 384 U.S. 424 (1966), rev’g Anthony Grace & Sons, Inc. v. United States, 170 Ct. Cl. 688, 345 F. 2d 808 (1965), dictates referral bach to the administrative agency for computation of damages in those instances in which the agency board had jurisdiction to hear the suit, and to grant the relief requested by the contractor. Such is not the ease here.