**TELEPHONE OPERATING SYSTEMS, INC., Plaintiff,**

v.

**PEOPLES TELEPHONE COMPANY, INC., Defendant/Counterclaim Plaintiff,**

v.

**TELEPHONE OPERATING SYSTEMS, INC., Counterclaim Defendant.**

No. 92–2687–CIV.

United States District Court, S.D. Florida.

Aug. 17, 1993.

Kimarie R. Stratos, Shutts & Bowen, Miami, FL, Mark Halverson, Elarbee, Thompson & Trapnell, Atlanta, GA, for plaintiff.

Steven Mitchel, Mitchel and Gold, Miami, FL, William D. Friend, Rhonda L. Klein, Atlanta, GA, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendant Peoples Telephone Company, Inc.'s Motion For Summary Judgment Or, In The Alternative, For Partial Summary Judgment, filed on January 8, 1993. Plaintiff Telephone Operating Systems, Inc., on March 22 filed a Memorandum In Opposition To Defendant's Motion For Summary Judgment. Defendant on June 2 replied in its Brief In Response To Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment.

In its Complaint, Telephone Operating Systems ("TOPS") charges Peoples Telephone Company ("PEOPLES") with tortious interference with contract, tortious interference with advantageous business relations, conversion, and trespass as to personal property. In its Motion for Summary Judgment, PEOPLES contends that there exists no genuine issue of material fact as to any of these charges. More precisely, PEOPLES does not state that the parties agree on all material facts; rather it contends that there is no evidence in the record to support the version of the facts proposed by TOPS.

TOPS vigorously disagrees with PEOPLES' assessment of the evidence in the record and with the legal conclusions drawn by PEOPLES from that evidence.

## A. Standard of Proof

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983) (citations omitted). "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368 (11th Cir.1982) (citation omitted). Although it is incumbent upon the responding party to "set forth specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), "[t]he burden on the nonmoving party is not a heavy one; he simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." 10A Charles A. Wright, et al., *Federal Practice and Procedure* § 2727 (1983) (citing *First Nat'l Bank of Az. v. Cities Serv. Co.,* 391 U.S. 253, 289–290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). The responding party may not need to introduce an affidavit or other evidence to counter a motion for summary judgment when the moving party has not met its initial burden of establishing the absence of a disputable material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160–161, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970).

It should be noted additionally that in contract cases, "summary judgment may be inappropriate when there is a factual dispute regarding the existence of a valid and binding agreement, or the scope of an agreement, as, for example, who is bound by it." Wright, et al., *supra,* at § 2730.1 (footnotes omitted). Furthermore, where the legal issues can be intelligently resolved only upon a more fully developed record, "an appraisal of the legal issues may lead a court to exercise its discretion and deny summary judgment in order to obtain the fuller factual foundation afforded by a plenary trial." *Id.,* at § 2728; *Anthony Grace & Sons, Inc. v. U.S.,* 345 F.2d 808, 810, 170 Ct.Cl. 688 (1965).

The case before the Court is a complicated mix of purported contracts among two providers of pay telephones and two franchises of general stores. The number of contracts at issue ranges from three (only the three PEOPLES–Sunshine contracts) to eight (those three, plus a series of six-month TOPS–Sunshine contracts, two five-year TOPS–Sunshine contracts applicable to the Waldo and MacClenny stores, a one-year (possibly automatically renewable) TOPS–Sunshine contract, and a TOPS–Sunshine agreement to provide service to over 100 existing Sunshine stores), depending upon which party's memoranda one is reading.

## B. Tortious interference with contractual or business relations

In order for TOPS to make out an actionable claim for tortious interference of contractual or business relations, it must show that (1) TOPS had business relationships with Sunshine and/or Wayfara, not necessarily evidenced by an enforceable contract, (2) PEOPLES had knowledge of TOPS' business relationships with Sunshine and/or Wayfara at the time of the acts complained of, (3) PEOPLES intentionally and unjustifiably interfered with TOPS' relationships with Sunshine and/or Wayfara, and (4) TOPS was damaged by breach of the relationships. *See MD Assoc. v. Friedman,* 556 So.2d 1158, 1159 (Fla.Dist.Ct.App.1990). Thus, in order to prevail in its motion for summary judgment, PEOPLES must show that there exists no genuine issue of material fact with respect to at least one of these four elements as regards each of the two franchises, Sunshine and Wayfara.

(1) Did TOPS have a business relationship with Sunshine and/or Wayfara, not necessarily evidenced by an enforceable contract?

PEOPLES asserts that there is no evidence in the record, in the form of affida-

vits or documents, to support the existence of a business relationship with Sunshine and/or Wayfara at the time of the acts complained of. The issue of whether the TOPS contracts were enforceable · at the time PEOPLES committed the acts of which TOPS complains is hotly contested. However, there is clearly sufficient evidence in the record to support the existence of a business relationship between TOPS and each of these entities, regardless of the enforceability of the contracts.

### a. TOPS–Sunshine Relationship

In its motion for summary judgment, PEOPLES argues that the TOPS–Sunshine relationship had terminated on November 30, 1990 (the date PEOPLES asserts the contract expired by its own terms), or on January 15, 1991 (the date, after the first one-year period when Sunshine's representative notified TOPS of its desire to terminate relations), or on November 30, 1991 (the date, following the notice by Sunshine, when the contract was terminable under TOPS' interpretation of the contract, that is, at one-year intervals). Some acts complained of by TOPS, however, allegedly occurred prior to those dates; in fact, part of TOPS' claim is that the notification by Sunshine was the direct result of tortious interference by PEOPLES. In addition, TOPS argues that PEOPLES interfered in the relationship as early as 1989 by instructing TOPS to remove its phones from Sunshine stores 265 and 307 because, as PEOPLES told TOPS, those stores were covered by a contract entered into by Sunshine and PEOPLES—even though this representation by PEOPLES was not true.

There clearly exist other issues in dispute on the issue of the TOPS–Sunshine relationship; however, the above will suffice to deny summary judgment on this issue. There exists some evidence, taken in the light most favorable to TOPS, of wrongdoing by PEOPLES during the period the TOPS–Sunshine contracts were in effect. The Court does not need to decide the following issues: (i) whether the one-year TOPS–Sunshine contract was enforceable or, rather, was invalid because of a pre-existing blanket agreement

entered into by Sunshine and PEOPLES; (ii) whether the one-year contract, if valid, was intended to expire automatically after one year, or whether the parties intended for the contract to automatically renew absent termination notice by Sunshine; (iii) whether, if the contract automatically renewed at the end of the one-year period, it was terminable immediately upon notice by Sunshine or would terminate only at one-year intervals upon such notice; (iv) whether actions by Sunshine, taken subsequent to a letter seeking to terminate the relationship, impliedly constituted an agreement to renew the contract for another one-year period; (v) whether, if the contract was terminated at the end of the one-year period, the continued compliance with the terms of the contract by both TOPS and Sunshine evidenced an intent to create a new contract with the same terms and conditions as the terminated one; and (vi) whether the Waldo and MacClenny contracts were enforceable despite their having been authorized only by individuals with local and possibly regional authority.

These issues of contract interpretation are issues of state law. The torts charged by TOPS are also governed by state law, and the weight of Florida authority supports the proposition that a party can be found to have tortiously interfered with a contractual or business relationship even if the relationship is not founded upon an enforceable contract. *Allen v. Leybourne,* 190 So.2d 825, 828 (Fla. Dist.Ct.App.1966) (quoting Prosser, *Torts,* § 106 at 725, 726 (2d ed. 1955)); *see also Fearick v. Smugglers Cove, Inc.,* 379 So.2d 400, 403 (Fla.Dist.Ct.App.1980); *United Yacht Brokers v. Gillespie,* 377 So.2d 668, 672 (Fla.1979); *Calvary Church, Inc. v. Siegel,* 358 So.2d 1134, 1136 (Fla.Dist.Ct.App.1978); *Young v. Pottinger,* 340 So.2d 518, 520 (Fla. Dist.Ct.App.1977); *but see Dwight v. Tobin,* 947 F.2d 455, 460 (11th Cir.1991). The Court finds that there is sufficient evidence in the record upon which a reasonable jury could find that but for the alleged interference of PEOPLES, Sunshine would have continued to perform under the agreements (the one-year TOPS–Sunshine contract, the five-year agreement covering the Waldo and MacClenny stores, etc.), regardless of their legal enforceability.

There exists a dispute as to whether the terms of renewal of the one-year contract are clear on the face of the contract or whether there is some ambiguity which would allow a court to consider parol evidence of the parties' intent on this issue. Under the original language of the five-year contract, the contract would have been automatically-renewed at the end of that period; it is disputed whether the elimination of the automatic renewal provision meant that Sunshine could cancel the contract after the first term (upon notice or at one-year intervals) or whether it meant that the contract would expire of its own terms at the end of the one-year period. PEOPLES argues that the language is not ambiguous on its face, and that therefore parol evidence is not admissible. PEOPLES urges that the latter is the proper interpretation of the language—that the alterations to the contract meant that it would expire by its own terms after one-year. Having reviewed the contract and the pleadings, the Court finds that the language admits itself to more than the one meaning ascribed to it by PEOPLES. As the language is subject to interpretation, it would not be inappropriate to allow parol evidence that only adds a gloss upon the contract but does not alter its terms or add an inconsistent term. It is disputable what the parties intended by their modification of the renewal provision when they changed the five-year contract to a one-year contract. This is an issue of material fact for a jury to decide.

Notwithstanding the Court's deferral of the issue of whether the revised contract was automatically renewed in the absence of cancellation by Sunshine, the Court holds that the one-year contract was terminated no later than November 30, 1991. There exists some evidence that would support a jury finding that Sunshine at least once ratified the renewal of the one-year TOPS contract by its actions, such as continuing to accept the commission checks for the months following November 1990 and sending to TOPS a new address where the commission checks should be sent. However, on January 15, 1991, it is undisputed that Sunshine's representative sent to TOPS a letter requesting the removal of all TOPS' telephones and seeking to terminate the business relationship between Sunshine and TOPS. At the latest, this notice should have been given effect by TOPS on November 30, 1991, the date the contract came due for renewal and would have been subject to termination even under TOPS' interpretation.

This is not to say that a protectable business relationship without a doubt existed up to that date; but no protectable relationship existed after that date. This holding eliminates those elements from TOPS' complaint that address actions taken by PEOPLES after November 30, 1991. There is nothing in this holding, however, that would prevent TOPS from introducing at trial actions taken by PEOPLES after November 30, if they are introduced only as evidence of wrongdoing prior to that date.

### b. Tops–Wayfara Relationship

There clearly existed a business relationship between TOPS and Wayfara. With respect to the TOPS–Wayfara relationship, it is disputed whether a valid contract was formed by the signatures of the local managers purportedly acting under the authority of the regional manager. Likewise, it is disputed whether the subsequent actions of Wayfara ratified the contracts, and whether delayed payments by TOPS under the contracts constituted a material breach of those contracts. But, the Court need not decide whether there existed an enforceable contract between TOPS and Wayfara because for a plaintiff to have a valid claim of tortious interference, the business relationship need not have been based upon an enforceable contract. *Allen v. Leybourne, supra,* 190 So.2d at 828. At the very least, TOPS' telephones were in place at the time of the acts complained of and the commission checks issued by TOPS were being cashed by Wayfara during this period. This could provide a reasonable basis for a jury to find that a business relationship existed between TOPS and Wayfara.

This is not to say that these and other factors establish the existence of an enforceable contract that was not terminable at will. Rather, these factors merely support the existence of a business relationship, and it is

TOPS' contention that PEOPLES tortiously interfered with that relationship, thereby souring that relationship. Clearly there is sufficient evidence from which a jury could infer that a business relationship existed between TOPS and Wayfara, regardless of the outcome on the contracts issue. In the final analysis, however, this issue is not critical because TOPS has failed to demonstrate that it suffered any cognizable damage as a result of the alleged actions by PEOPLES relative to the TOPS–Wayfara relationship (*see infra* Part B(4)).

(2) Did PEOPLES have knowledge of TOPS' business relationships with Sunshine and/or Wayfara at the time of the acts complained of?

There exists sufficient evidence in the record to support the allegation that PEOPLES had knowledge of TOPS' business relationship with the two franchises at the time of the acts complained of. Although Sunshine's representative forwarded to PEOPLES only a blank TOPS form agreement, rather than the actual executed contracts, this could be a sufficient factor for a jury to find that PEOPLES had knowledge of the existence, in some form, of TOPS' contracts with Sunshine. A jury could certainly find that receipt from Sunshine of a blank TOPS contract, together with the known presence of TOPS' telephones at some of the Sunshine stores, had to be at least a strong signal that a TOPS–Sunshine contract existed.

Whether this prong is satisfied with respect to the TOPS–Wayfara contract, is moot because, as will be explained *infra*, TOPS has failed to show it was damaged in a cognizable way by PEOPLES (*see infra* Part B(4)).

(3) Did PEOPLES intentionally and unjustifiably interfere with TOPS' relationships with Sunshine and/or Wayfara?

In its motion for summary judgment, PEOPLES points to depositions indicating that the decision by Sunshine to terminate the contract with TOPS was not made at the suggestion of PEOPLES; however, there exists sufficient evidence upon which a jury could reasonably find for TOPS on this issue.

A jury could not choose simply to disbelieve the witnesses proffered by PEOPLES if there existed no facts or testimony that contradicted those witnesses. In this case, however, TOPS has pointed to numerous facts which could lead a reasonable jury to the conclusion that PEOPLES did, in fact, intentionally interfere with the business relations between TOPS and Sunshine. Even where certain facts are agreed upon by the parties, the inferences to be drawn from those facts differ dramatically.

For example, PEOPLES acknowledges that after it would sign a blanket agreement for all the stores of a franchise located in a certain area and after surveying the stores would find the telephones of a competitor, it would routinely seek copies of the contracts pursuant to which the competitor's telephones were installed. It would then evaluate the enforceability of those contracts for the franchise. (Merkle Dep., pp. 55–56, 58, 62; Benito Dep., pp. 116–117). A reasonable jury could find that the line is too fine and technical between evaluating for a franchise the enforceability of a contract and recommending to the franchise that it terminate the contract—especially in light of the evidence that PEOPLES would also provide form termination agreements to the franchise (not, according to PEOPLES, to induce termination, but simply at the request of the franchise).

There are other facts, as well, which could be used by a fact-finder to draw inferences adverse to PEOPLES. PEOPLES would routinely provide incentives to potential customers, allegedly offering Sunshine $350 for each pre-existing pay phone removed prior to the installation of PEOPLES equipment at each Sunshine location. (Benito Dep.) Whether these incentives are innocuous because, for example, they merely represent fair compensation or constitute a custom in the pay telephone industry, would be an issue of fact for a jury to decide.

It would also be for a jury to decide whether PEOPLES' alleged false representation to TOPS was evidence of tortious interference. After signing a regional agreement that covered four of the six Sunshine stores where TOPS had its telephones located, PEOPLES

allegedly misrepresented to TOPS that it had signed a national agreement with Sunshine that covered all of the stores where TOPS had telephones. This fact could serve as evidence of tortious conduct by PEOPLES.

It would also be for a jury to examine whether PEOPLES acted tortiously when it contacted Sunshine's new purchasing manager in June 1991 to tell him that TOPS had pay phones at certain Sunshine locations without valid agreements (Benito Aff't, ¶ 24; Coffman Aff't, ¶ 5)—this despite the fact that PEOPLES had been unable to secure final copies of the TOPS–Sunshine contracts for the purpose of evaluation.

There is, as mentioned above, evidence that PEOPLES provided to Sunshine form language for a termination letter demanding that TOPS remove its phones from Sunshine stores (Benito Dep., pp. 115–16; Dickhaus Dep.)—language identical to that received by TOPS from Wayfara in *its* termination letter.

None of this evidence need be sufficient by itself to establish tortious behavior on the part of PEOPLES—and neither is this court holding that in the aggregate it compels a finding of tortious interference—but surely a jury could draw inferences adverse to PEOPLES from evidence such as this in the record. In its motion for summary judgment, PEOPLES has failed to carry its burden of showing there is no genuine issue of material fact with respect to this issue—that there is no evidence in the record in support of a tortious interference claim against PEOPLES.

As for Wayfara, there exists in the record at least as much evidence upon which a jury could rely in finding tortious behavior on the part of PEOPLES. However, in light of this Court's holding that TOPS has failed to show it was damaged in a cognizable way by PEOPLES' actions as regards the TOPS–Wayfara relationship (*see infra* Part B(4)), the sufficiency of evidence upon which tortious behavior could be found is moot.

(4) Was TOPS damaged by the breach of the relationships?

Clearly, there is sufficient evidence in the record to support the claim by TOPS that it suffered economic damage as the result of the termination of the relationship with Sunshine. This is not to say, of course, that the termination was tortiously caused by PEOPLES; however, if this connection is established at trial, PEOPLES would clearly be liable for *some* amount of damages. (*See infra* Part F.)

It is less evident that TOPS was damaged by a breach of its relationship with Wayfara. At least in one place in PEOPLES' Motion for Summary Judgment, PEOPLES characterizes the TOPS–Wayfara contract as terminated. (Plaintiff's Motion for Summary Judgment, p. 26). However, this characterization is employed as the basis for asserting a defense of justification; elsewhere in its motion, as well as in its Reply memorandum, PEOPLES asserts that the TOPS–Wayfara contract was never actually terminated, and TOPS does not refute this. In reality, despite the letters from Wayfara seeking to terminate relations with TOPS, those relations apparently were never actually terminated.

TOPS seeks damages arising from PEOPLES' actions relative to Wayfara not because of a termination of the TOPS–Wayfara relationship, but rather on the grounds that TOPS' relations with Wayfara have been irreparably poisoned and that TOPS has lost future business that would have transpired with Wayfara had PEOPLES not interfered in the TOPS–Wayfara relationship. These damages are asserted despite the acknowledgement by TOPS' president that TOPS has recently obtained another contract with Wayfara. (Dickhaus Dep. p. 172). The Court holds that these grounds are insufficient to satisfy this prong. Despite adequate evidence in the record from which a jury could draw inferences of tortious interference by PEOPLES, the lack of cognizable damages suffered by TOPS in its relations with Wayfara precludes the submission of this issue to the jury. Thus, PEOPLES is entitled to summary judgment as to the issue of tortious interference of contract with Wayfara.

*C. Does TOPS have a valid legal claim for conversion?*

Whether TOPS has a valid legal claim for conversion of tangible property is

dependent, at least to a certain extent, on whether it is ultimately found that contracts existed between TOPS and Sunshine. If no contracts existed, PEOPLES could not be held liable for removing TOPS' property at the request of the owner, Sunshine (this, of course, would be co-extensive with the defense of privilege). Furthermore, PEOPLES urges that TOPS must have made a demand for return of the property and been refused. This, however, appears to depend on whether the action complained of is inherently wrongful (12 Fla.Jur.2d, *Conversion and Replevin*, § 16); and this is, in turn, dependent on whether there existed an enforceable contract between TOPS and Sunshine, an issue the Court has indicated is one for a jury. Thus, the Court prefers to address the issue of conversion, as regards TOPS' tangible property, after the record has been more fully developed at trial and the contractual issues have been resolved.

■ Nevertheless, this Court holds that TOPS does not have a cognizable claim for conversion with respect to the value of the contracts (if any existed) between it and Sunshine. Both parties have acknowledged that there exists no Florida case law directly on point, but TOPS has pointed out that (i) one state court has held that in certain circumstances intangible rights can properly be the subject of conversion, and (ii) the Eleventh Circuit has expressly declined to hold that a breach of contract can *never* give rise to a claim of conversion. PEOPLES cites several Florida cases in support of the proposition that a breach of contract action cannot be turned into a claim for conversion, and it argues that the state case cited by TOPS (*In re Estate of Corbin*, 391 So.2d 731 (Fla.Dist. Ct.App.1980)) is restricted to situations where there is no other adequate relief available to the injured party. TOPS, in its response, acknowledges that it may be precluded from recovering under both the conversion and tortious interference claims, but it urges the Court to refrain from dismissing this claim until after it is seen whether TOPS will prevail on its tortious interference claim.

The Court, however, sees no way for TOPS to prevail on its claim of conversion of the contracts if it does not also prevail on its tortious interference claim. In order for this to occur, it would have to be found that there existed enforceable contracts between TOPS and Sunshine and that PEOPLES unlawfully converted those contracts to itself but did not tortiously interfere with them. This is an anomaly the Court would be unlikely to let stand. A successful claim of conversion would necessarily satisfy the four elements essential to a claim of tortious interference. At that point, then, recovery could only be had under one (*Id.*, at 732), and it would only be proper under conversion if restitution would be an inadequate remedy (Id., n. 1 at 732).

In *Corbin*, a business was unlawfully sold by an individual who in return only received a fraction of the value of the business. There, the court found restitution might be an inadequate remedy because of the significant discrepancy in value between what was taken from the estate and what was received by the unlawful seller. In the instant case, by contrast, restitution would not similarly be an inadequate remedy necessitating "the rather drastic relief of conversion." *Id.* (citing Prosser, *Law of Torts* 82–83 (4th ed. 1971)).

While recognizing, as did the Eleventh Circuit, that there may someday arise a breach-of-contract case where a claim of conversion should be sustained, the Court finds that in the instant case would be inappropriate to hold PEOPLES liable for conversion of the value of the contracts at issue.

*D. Does TOPS have a valid legal claim for trespass?*

■ As with the claim for conversion of tangible property, this issue is, at least in part, determined by whether there existed enforceable contracts between TOPS and Sunshine. If such contracts existed, TOPS could be considered the leaseholder of the tiny part of land upon which its telephones were located. In that case, PEOPLES might not be permitted to enter that land and remove the property thereon, even at the behest of Sunshine. Thus, although PEOPLES may ultimately prevail on the issue at trial, the outcome is intimately linked to the status of the TOPS–Sunshine contracts, and

summary judgment must be denied as to this count.

### E. Has PEOPLES waived the defenses of justification or privilege with respect to all of TOPS' claims?

#### (1) Has PEOPLES waived these defenses by not pleading them in its Answer?

There is currently pending before this Court a Motion to Amend Defenses and Answer to Complaint, filed by PEOPLES. For purposes of the instant motion, the Court will treat the Motion to Amend as if it were granted.

#### (2) Were PEOPLES' actions justified?

■■■ Whether PEOPLES' actions at issue in this case were justified is intimately linked to the issues set forth above that the Court has held should be submitted to a jury. PEOPLES has as much as acknowledged this link by asserting, in support of this defense, that "all of the evidence disputedly shows that at a time when the Second Sunshine Contract was signed, the only contracts expressly between TOPS and Sunshine were the unauthorized Waldo and MacClenny Contracts, and the Six–Month Contracts; the latter expired in November of 1990, at which time the Second Sunshine Contract would have taken effect. In fact, it is TOPS who entered into the One–Year Contract, notwithstanding its knowledge of the Second Sunshine Contract." (PEOPLES' Reply Brief, p. 30). The validity of each of these contracts and the time at which each was terminated are issues that the Court has indicated involve factual disputes sufficient for submission to a jury. Thus, the Court will refrain from ruling on whether PEOPLES was justified in its actions until a more fully developed factual record is provided by the trial process.

### F. As a matter of law, should the damages which TOPS may recover be limited?

■■■ The damages sought by TOPS include revenues that would have been received by TOPS under the contracts allegedly in existence at the time of wrongdoing by PEOPLES. This is reasonable, and the rela-tionship between these damages and the actions alleged by TOPS is proximate and foreseeable. TOPS should be allowed to seek revenues that would have been generated under the contracts through the end of the terms of the contracts.

■■■ TOPS should also be permitted to seek to recover for the diminished opportunity to receive a renewal of the one-year Sunshine contract. The law is well settled that compensation will not be awarded where the damages sought are speculative, remote, and unforeseeable. *Nat'l Airlines v. Edwards*, 336 So.2d 545, 546 (Sup.Ct.Fla.1976). A claim for damages resulting from Sunshine's alleged failure to renew the contract is not as remote and unforeseeable as was the case in *Edwards*. There, a passenger jet owned and operated by the defendant was hijacked to Cuba. The plaintiff sued the airline for illnesses resulting from her consumption of Cuban food and drink as a result of the hijacking. The Court held that the damages alleged by the plaintiff were, as a matter of law, not compensable because they were too remote.

In the instant case, damages from a failure to renew the contract in question are certainly more foreseeable. In fact, if a party can be held liable for tortious interference of contract even in the absence of an enforceable contract, then damages must be awardable even when a customer could have terminated the relationship of its own accord. Whether the damages will ultimately be awarded will depend on the facts introduced by TOPS establishing the likelihood of continued relations with Sunshine in the absence of PEOPLES' actions (assuming those actions will be found to be tortious).

TOPS also seeks damages for the lost opportunity to supply pay phones to more than 100 existing Sunshine stores. This claim for damages hinges on whether the list of stores provided to TOPS by Sunshine, together with the signed form authorizing TOPS to order telephone lines for at least some of the stores, represented a contract. There are contradictory affidavits on this issue, and the determination of whether there existed a contract between TOPS and Sunshine for installation of TOPS' phones at the stores on

**850**

the list is consequently an issue to be decided by a jury.

■ Finally as regards the TOPS–Sunshine relationship, TOPS seeks damages for its alleged lost opportunity to supply pay phones to new stores that Sunshine might build or purchase. These damages more nearly approach the degree of remoteness and unforeseeability evident in the *Edwards* case. There was clearly no guarantee that even in the absence of any interference by PEOPLES Sunshine would have commissioned TOPS to install its phones at future stores, and the only evidence of such an intent are the affidavits offered by each side. Even if the affidavits proffered by TOPS are credited over those of PEOPLES, they would show only that there was a loose intent that would not represent a protectable ongoing business relationship. In *Brown v. Larkin & Shea, P.A.,* 522 So.2d 500, 501 (Fla.Dist.Ct.App.1988), the Florida Court of Appeal held that a plaintiff could not recover damages for tortious interference of contract where "there was only a bare expectancy, rather than a legal right, that the relationship would continue." In this sense, any agreement between TOPS and Sunshine to provide service for future stores which may be built or purchased differs *in degree* from an alleged contract to provide service to the 100 stores named on the list provided to TOPS by Sunshine. PEOPLES, therefore, cannot be held liable for damages resulting from the lost opportunity to provide service to future Sunshine stores not yet acquired.

TOPS' petition for damages arising from the diminished opportunity to provide pay telephones to other customers which TOPS might have obtained by using Sunshine as a reference must similarly be dismissed as too remote, unforeseeable, and speculative.

### G. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully informed in the premises, it is

ORDERED, ADJUDGED, and DE-CREED that Defendant PEOPLES' Motion For Summary Judgment Or, In The Alternative, For Partial Summary Judgment be, and

the same is hereby, GRANTED IN PART and DENIED IN PART. As set forth above, TOPS' claim of tortious interference of contract with respect to the TOPS–Wayfara contract is DISMISSED; TOPS' claims based upon actions taken by PEOPLES relative to the TOPS–Sunshine contract after November 30, 1991 are DISMISSED; TOPS' claims for damages resulting from the loss of opportunity to install pay telephones at Sunshine stores yet to be purchased or built is DISMISSED; and TOPS' claims for damages resulting from the diminished opportunity to secure other customers by using Sunshine as a reference is DISMISSED. All other claims asserted by TOPS against PEOPLES involve genuine issues of material fact and would be better decided by this Court upon the more fully developed factual record that will be developed at trial.

DONE and ORDERED.